JOSEPH M. WELCH (SBN: 259308)
BUCHALTER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Fax: (949) 720-0182
Email: jwelch@buchalter.com

JOHN S. CLIFFORD (SBN: 172263)
SMITH LC
3161 Michelson Dr., Suite 925
Irvine, California 92612
Telephone: (949) 416-5000
Fax: (949) 416-5555

Attorneys for Russell Wallace

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:16-bk-12895-ES |
| 29 Prime, Inc., | Chapter: 7 |
| Debtor. | **DECLARATION OF RUSSELL WALLACE IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| | [Hearing to be Set by Notice] |

I, Russell Wallace, declare as follows:

1.      I am an officer and director of OC Listings, Inc. and 29 Prime, Inc. (collectively, "Debtors"). I am a custodian of records for all documents attached to this declaration, which were obtained from my own files, records and computers or from lawyers at my direction. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.

2.      A true and correct copy of the Policy is attached hereto as Exhibit 1.[1]

---

[1] Capitalized terms used but not defined herein, have the meanings given them in the concurrently-filed Memorandum of Points and Authorities.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**DECLARATION OF RUSSELL WALLACE IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

BN 28115444v1

3.    Mr. Tony Redman and I are defendants in the Lawsuit pending before the United States District Court, Northern District of California in connection with our service as directors and officers of the Debtors.

4.    In connection with the Lawsuit, we have incurred and will continue to incur defense costs and fees.

5.    The Debtors are required to indemnify these expenses, but have not.

6.    As a result, we have sought coverage for the Lawsuit under the Policy, and the Insurer has agreed to advance Defense Costs under the Policy under a reservation of rights.  The Insurer has requested assurance that it will not violate the automatic stay by advancing or reimbursing covered Losses, including covered Defense Costs (as defined in the Policy).

7.    I am not aware of any existing requests for indemnification from Insured Persons that would, now or any time in the immediate future, give rise to a right on the part of the Debtors to recover under the Policy.  By contrast, I have incurred and will likely continue to incur significant costs and expenses and other Loss because of the Lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration is made on 3/9/2017 in Capistrano Beach, California.

_____
Russell Wallace

**DECLARATION OF RUSSELL WALLACE IN SUPPORT OF MOTION FOR RELIEF
FROM THE AUTOMATIC STAY**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 28115444v1

# EXHIBIT 1

# EXHIBIT 1

## FORMS SCHEDULE

Policy Number: 01-541-71-46                 Effective Date: October 22, 2013
Division No:  39                            Expiration Date: October 22, 2014
Insured Name: OC Listing, Inc

                                           Print date:  Feb 10, 2014
Underwriter Name:Brett Leonette            Printed by:EDMARK CORMINAL
Underwriter Phone # : 312-930-5300         Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| RTQD01 | | RISK TRANSFER |
| ENVPGE | LETTER | ENVELOPE PAGE |
| CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| COM001 | 91222 | POLICYHOLDER NOTICE |
| QE8942 | | EPL PAK PREMIER INSURED LETTER |
| QE6634 | | EPL PAK HIGHLIGHT SHEET |
| QD7759 | 104892 | PRIVATEEDGE PLUS - STATE OF CALIFORNIA DEC |
| QS7761 | 104892 | SIGNATURE PAGE |
| QT0001 | 81285 | TRIA DEC DISCLOSURE FORM |
| QP7760 | 104890 | PRIVATEEDGE PLUS - GENERAL TERMS AND CONDITIONS - STATE OF CALIFORNIA |
| QP5975 | 95727 | D&O COVERAGE SECTION |
| QP5997 | 95728 | EPL COVERAGE SECTION |
| QP5961 | 95730 | CRIME COVERAGE SECTION |
| QE6113 | SYSLIB | F.R.I.S.C. LIST |
| QE1731 | | SECURITIES CLAIM PANEL COUNSEL LIST |
| QE3338 | | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| QE6778 | 97886 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| QE6369 | 96311 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| QE0440 | 52133 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| QE9307 | 105721 | DEFINITION OF LOSS AMENDED ENDORSEMENT (PUNITIVE DAMAGES) (D&O AND EPL COVERAGE SECTIONS) - (STATE OF CALIFORNIA) |
| QE9529 | 89644 | ECONOMIC SANCTIONS ENDORSEMENT |
| QE6604 | 97629 | FLSA AND RELATED EXCLUSIONS AMENDED (D&O  AND EPL COVERAGE SECTIONS) |
| QE7215 | 99758 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| QE5938 | 95737 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |

*Archive Copy*

**FORMS SCHEDULE**

Policy Number: 01-541-71-46
Division No:    39
Insured Name:  OC Listing, Inc

Effective  Date: October 22, 2013
Expiration Date: October 22, 2014

Print date:  Feb 10, 2014
Printed by: EDMARK CORMINAL
Phone # :

Underwriter Name: Brett Leonette
Underwriter Phone # : 312-930-5300

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ QF1644 | 105469 | CLAIM DEFINITION AMENDED (MEDIATION)(D&O & EPL COVERAGE SECTIONS) |
| ☐ QF1638 | 105468 | CLAIM DEFINITION AMENDED (INJUNCTIVE RELIEF)(D&O & EPL COVERAGE SECTIONS) |
| ☐ QF0697 | 102330 | INSURED V INSURED EXCLUSION AMENDED (SARBANES-OXLEY WHISTLEBLOWER; CREDITORS' COMMITTEE) (D&O COVERAGE SECTION) |
| ☐ QE7231 | 99563 | SIDE A EXCESS LIMIT OF LIABILITY ENDORSEMENT (EXCESS LIMIT APPLICABLE TO NON-INDEMNIFIABLE LOSS UNDER THE D&O COVERAGE SECTION) |
| ☐ QF1569 | 105118 | EXTRADITION COVERAGE (D&O COVERAGE SECTION) |
| ☐ QE6952 | 99193 | SPECIFIC INVESTIGATION-CLAIM-LITIGATION-EVENT OR ACT EXCLUSION (D&O EPL AND FLI COVERAGE SECTION) |
| ☐ QE6949 | 99187 | SPECIFIC ENTITY EXCLUSION (CLAIMS BROUGHT BY OR AGAINST) (ALL COVERAGE SECTIONS) |
| ☐ QE5977 | 95756 | EXCLUDE CLAIMS BROUGHT BY OR ON BEHALF OF SPECIFIC INDIVIDUALS (D&O & EPLI COVERAGE SECTION) |
| ☐ QE7504 | 101279 | ADDITIONAL INSUREDS - LISTED AFFILIATES (SPECIFIED COVERAGE SECTIONS) |
| ☐ QE5942 | 95869 | ADDITIONAL INSURED ENDORSEMENT (CRIME COVERAGE SECTION) |
| ☐ QE5941 | 96298 | ADD CREDIT, DEBIT OR CHARGE CARD FORGERY ENDORSEMENT (CRIME COVERAGE SECTION) |
| ☐ QF1500 | 105100 | NAMED INSURED OMNIBUS ENDORSEMENT (CRIME COVERAGE SECTION) |
| ☐ QE5953 | 96301 | INCLUDE DESIGNATED PERSON REQUIRED TO HAVE KNOWLEDGE OF LOSS ENDORSEMENT (CRIME COVERAGE SECTION) |
| ☐ QE5956 | 96295 | PRIOR THEFT OR DISHONESTY ENDORSEMENT (CRIME COVERAGE SECTION) |
| ☐ QF0412 | 100704 | RELIANCE UPON APPLICATION MADE TO ANOTHER CARRIER (SPECIFIED COVERAGE SECTIONS) |
| ☐ QE6932 | 99182 | PUBLISHING LIABILITY EXCLUSION ENDORSEMENT (WITH SECURITIES CLAIM CARVE-BACK) (D&O COVERAGE SECTION) |
| ☐ QE6931 | 98962 | PROFESSIONAL ERRORS AND OMISSIONS EXCLUSION ENDORSEMENT (WITH SECURITIES CLAIM CARVEBACK) (D&O COVERAGE SECTION) |
| ☐ MNSCPT | 101090 | ORDER OF PAYMENTS ENDORSEMENT |
| ☐ MNSCPT | M112261 | DEFINITION OF LOSS AMENDED ENDORSEMENT |

*Archive Copy*

**FORMS SCHEDULE**

Policy Number: 01-541-71-46                     Effective  Date: October 22, 2013
Division No:     39                             Expiration Date: October 22, 2014
Insured Name:  OC Listing, Inc

                                                Print date:   Feb 10, 2014
Underwriter Name:Brett Leonette                 Printed by: EDMARK CORMINAL
Underwriter Phone # : 312-930-5300              Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ MNSCPT M112255 | | AUTO-THRESHOLD AMENDED |
| ☐ QE2392 78859 | | FORMS INDEX ENDORSEMENT |

Page 3 of 3                                      **NUSFRM**

*Archive Copy*

| Account Name: | OC Listing, Inc | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| Policy Number: | 01-541-71-46 | Policy Effective Date: | October 22, 2013 |
| Underwriter: | Brett Leonette | Print Date: | Feb 10, 2014 |
| | | | |

| Initial Risk Transfer Assessment Date: | | October 15, 2013 | |
|---|---|---|---|
| Risk Assessment Date | Risk Transfer Qualification | Risk Assessment Date | Risk Transfer Qualification |
| 10/23/2013 | R1 | 02/07/2014 | R1 |
| 02/10/2014 | R1 | | |

**Risk Transfer Qualification Key:**

**R1 -** Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary
**R2 -** Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R3 -** Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R4 -** Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.
If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____
Underwriter                                                           Division President


_____
Chief Financial Officer

**Archive Copy**

**National Union Fire Insurance Company of Pittsburgh, Pa.**
500 West Madison street
SUITE 3000
Chicago, IL 60661- 4576
312- 930- 5300



February 10, 2014

Direct Dial:    312- 930- 5300

CHARLES BLACKMON
EQUITY RISK PARTNERS, INC.
200 W. MADISON, SUITE 3450
CHICAGO, IL 60606

RE:  OC Listing, Inc

Policy Number:    01- 541- 71- 46

Dear CHARLES

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the
captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

Brett Leonette
Underwriter
Executive Liability
312- 930- 5300

Enc.

1492332

*BRANCH Archive Copy*

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

*February 11, 2014*

Congratulations on purchasing your employment practices liability insurance policy from AIG, one of the premier writers of commercial insurance. Your policy offers many outstanding features, including coverage for claims arising from violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); the Equal Pay Act of 1963 (EPA); and the Rehabilitation Act of 1973 (REHAB ACT).

As a AIG policyholder, you have the confidence of knowing that your claims will be handled by experienced claims professionals. In addition, our panel counsel is comprised of leaders in employment practices law throughout the country. The services of these law firms are available to you at preferred AIG rates.

Additionally, our package includes loss-control services included automatically for all eligible insureds through **EPL Pak® Premier.** This insurance offering features access to our online EPL Risk Manager located at www.EPLriskmanager.com , designed exclusively for AIG EPL insureds by the attorneys at Littler Mendelson, the nation's largest labor and employment law firm. This web link is exclusive to AIG EPL insurance policyholders and is available at no additional cost. To register, you can log into the site with your policy number. The site offers tools and resources including:

- Human Resources Form Library
- Sample Employee Handbooks
- Employment Law Email Alerts
- Employment Law Policies
- Hire & Fire Manual

- Employment Law Reference Manuals (5000+ pages)
- 50 State Analysis of Key Employment Laws
- Preventing Unlawful Harassment Guide
- Preventing Employment Class Actions Manual
- Discounts on Employment Law Training

All forms and materials may be downloaded and customized. To view a short video tour of the risk management products and services available, please visit: **http://eplriskmanager.com/take_tour.php.** As a AIG policyholder, you also receive ten free seats to Littler Mendelson's monthly webinar series on preventing harassment in the workplace and discounts on over 40 employment law training courses. For additional information on these services you may contact Brian McMillan at Littler Mendelson at bmcmillan@littler.com or visit www.littler.com.

To complement these offerings, we continue to offer your risk management solutions provided by Jackson Lewis, LLP, a premier employment law firm with offices throughout the United States, including:

- Unlimited Access to the Jackson Lewis Toll Free Risk Management Hotline: (866) 614-0744
- One hour legal consultation with a Jackson Lewis attorney on any topic
- Seminars on topical issues of employment law, recent litigation development, and training
- Email subscription to The Jackson Lewis Newsletter, which highlights employment practices developments and trends
- Email updates regarding significant legislative actions, judicial decisions, and other changes which may impact your business
- Access to a self-audit checklist and a pre-termination checklist, which will assist companies in identifying potential vulnerability to employment claims
- Attendance at CAAB 1825 sexual harassment training in California

To learn more, please contact Paul Siegel at siegelp@jacksonlewis.com, Wendy Mellk at mellkw@jacksonlewis.com or view a free demonstration of training at www.jacksonlewis.com , or under the online training section or at www.workplaceanswers.com

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business. We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, a AIG representative or email us at executiveliability@AIG.com.

AIG is the marketing name for the worldwide property-casualty and general insurance operations of AIG Property Casualty Inc. For additional information, please visit our website at http://www.aig.com . All products are written by insurance company subsidiaries or affiliates of AIG Property Casualty Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

*Archive Copy*





Financial Lines

# EPL Pak® Premier

## Employment Practices Training, Loss Prevention and Risk Management

Controlling employment practices liability exposures while keeping pace with employment litigation trends and regulatory changes is a major challenge for all employers. AIG gives its employment practices liability (EPL) policyholders a unique advantage with EPL Pak® Premier, industry-leading loss prevention offerings. The suite is a combination of training, loss control and risk management tools designed to help our clients manage employment practices risks. EPL Pak Premier's resources are exclusive to AIG, and provide our EPL policyholders with access to expertise and materials from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

### Putting Experts By Your Side

EPL Pak Premier now includes instant access to www.eplriskmanager.com, which provides first-in-class risk management tools and resources from Littler Mendelson, a leading employment and labor law firm. Materials available include essentials to manage your workforce and reduce exposure to employment related liability including:

- **Handbooks and Policies:** Sample employee handbook and policies to help implement best employment practices, including supplemental information for all 50 states
- **Forms Library:** A library of commonly used human resource forms, which can be customized, to ease your administrative burden
- **Workforce Guides:** A hiring and firing guide to help employers mitigate the risks of these critical phases of the employment relationship and step-by-step guides to prevent harassment, including information to help address and resolve incidents and lessen potential liability
- **Legal Reference Materials:** Over 3,000 pages of employment law reference manuals providing insights on timely topics ranging from layoffs, downsizing, and furloughs, to workplace violence, discrimination, and employment class actions. Includes a state-by-state assessment of employment laws and regulations

EPL Pak Premier gives you access to expertise and resources from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

*Archive Copy*





Financial Lines

## EPL Pak® Premier

State of the Art Enhancements

These state-of-the-art enhancements complement EPL Pak Premier's original package of risk management solutions from Jackson Lewis, LLP, which include:

- **Legal Consultation:** A one-hour legal consultation on human resources and employment law issues, such as how specific laws impact personnel decisions and potential exposure to liability
- **Liability Updates:** Access to the Jackson Lewis e-Newsletter and e-updates spotlighting important workplace law news and trends. Alerts on significant legislative actions, judicial decisions and other changes with potential impact on our insured's business
- **Checklists:** Self-audit and pre-termination checklists to help insureds identify vulnerabilities and safely navigate risky terrain
- **Special California State Training:** CA AB 1825 training, enabling companies with 50 or more employees in California to fulfill their mandate of providing sexual harassment training for supervisors every two years

EPL Pak Premier also includes Alternative Employment Dispute Resolution Programs from EDR Systems at preferred rates. EDR Systems will assist to resolve employee disputes internally and prevent time and money in litigation. The professionals at EDR Systems have more than 50 years of combined experience in human resource management, strategic planning, change management, and employee relations. They support a wide variety of businesses of all sizes, from national, multi-unit retail operations, to single-facility manufacturers, to professional firms.

---

To learn more about EPL Pak Premier services:

E-mail:
FinancialLines@aig.com

Visit:
www.aig.com

Contact:
Your insurance broker

 Bring on tomorrow

American International Group, Inc. (AIG) is a leading international insurance organization serving customers in more than 130 countries. AIG companies serve commercial, institutional, and individual customers through one of the most extensive worldwide property- casualty networks of any insurer. In addition, AIG companies are leading providers of life insurance and retirement services in the United States. AIG common stock is listed on the New York Stock Exchange and the Tokyo Stock Exchange.

Additional information about AIG can be found at www.aig.com | YouTube: www.youtube.com/aig | Twitter: @AIG_LatestNews | LinkedIn: www.linkedin.com/company/aig

AIG is the marketing name for the worldwide property-casualty, life and retirement, and general insurance operations of American International Group, Inc. For additional information, please visit our website at www.aig.com. All products and services are written or provided by subsidiaries or affiliates of American International Group, Inc. Products or services may not be available in all countries, and coverage is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain property-casualty coverages may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds, and insureds are therefore not protected by such funds.

*Archive Copy*



National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

# PrivateEdge Plus

**POLICY NUMBER:** *01-541-71-46*          **REPLACEMENT OF POLICY NUMBER:** *N/A*

## Management Liability, Professional Liability and Crime Coverage for Private Companies
## DECLARATIONS - STATE OF CALIFORNIA

### NOTICES

[ THESE NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION]

COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES.  DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION. WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

| ITEMS | | | |
|---|---|---|---|
| **NAMED ENTITY:** | (the "Named Entity") | *OC Listing, Inc* | |
| | MAILING ADDRESS: | *9701 JERONIMO RD FL 3 IRVINE, CA 92618-2076* | |
| | STATE OF INCORPORATION/FORMATION: | *California* | |
| **POLICY PERIOD:** | Inception Date: *October 22, 2013* | Expiration Date: *October 22, 2014* | |
| | 12:01 A.M. at the address stated in Item 1 | | |

*1492332*

© All rights reserved.

ITEMS (continued)

## COVERAGE SUMMARY

| Liability Coverage Section | | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity/ Retroactive Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O Coverage Section | $3,000,000 | Inapplicable | $100,000 | Continuity: 10/22/2013 | ■ |
| EPL | Employment Practices Coverage Section | $2,000,000 | Inapplicable | $100,000 | Continuity: 10/22/2013 | ■ |
| FLI | Fiduciary Liability Coverage Section | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased |
| MPL | Miscellaneous Professional Liability Coverage Section | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased |
| CCP | Professional Services: Employed Lawyers Coverage Section | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Crime | Crime Coverage Section | See Section 5. | None | See Section 5. | N/A | ■ |

| | |
|---|---|
| *With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss. <br> *No Retention is applicable to Costs of Investigation for Company Shareholder Derivative Investigations, Crisis Management Events, Voluntary Compliance Loss and HIPAA Penalties. | N/A |

**TOTAL PREMIUM** ■

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $265 included in policy premium.
Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.
A copy of the TRIA disclosure sent with the original quote is attached hereto.

*1492332*

REDACTED

ITEMS (continued)

## CRIME LIMITS OF LIABILITY AND DEDUCTIBLES

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Insuring Agreement 1.A.: "Employee Theft" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.B.: "Forgery or Alteration" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.C.: "Inside the Premises - Theft of Money or Securities" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.D.: "Inside the Premises - Robbery or Safe Burglary of Other Property" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.E.: "Outside the Premises" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.F.: "Computer Fraud" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.G.: "Funds Transfer Fraud" Loss | *$1,000,000* | *$10,000* |
| Insuring Agreement 1.H.: "Money Orders and Counterfeit Paper Currency" Loss | *$1,000,000* | *$10,000* |

If "Not Covered" is inserted above opposite any specific Insuring Agreement, such Insuring Agreement in the Crime Coverage Section and any other reference thereto in this policy is hereby deleted.

**CANCELLATION OF PRIOR CRIME INSURANCE:** By acceptance of the Crime Coverage Section of this Policy, you give us notice of cancellation for the prior Policy Nos: *Not Applicable.* Such cancellation shall be effective at the time the Crime Coverage Section of this Policy becomes effective.

## THIS ITEM 6 IS INAPPLICABLE TO THE POLICY

### OTHER LIMITS OF LIABILITY

| | |
|---|---|
| **(a) POLICY AGGREGATE LIMIT OF LIABILITY (For all coverages, combined other than the Crime Coverage Section):** | *$5,000,000* |
| **(b) Crisis Management Fund For D&O:** | *$25,000* |
| **(c) Punitive Damages Sublimit of Liability for D&O and/or EPL Coverage Sections:** | |
| ☐ D&O Punitive Damages Sublimit of Liability: | *$0* |
| ☐ EPL Punitive Damages Sublimit of Liability: | *$0* |
| ☐ Shared Punitive Damages Sublimit of Liability (D&O and EPL): | *$0* |
| ☒ No Punitive Damages Sublimit of Liability for D&O or EPL | *Full Limit* |
| **(d) Costs of Investigation Coverage Sublimit for D&O:** | *$150,000* |
| **(e) Voluntary Compliance Loss Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |
| **(f) HIPAA Penalties Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |

### DISCOVERY PROVISIONS (Inapplicable to Crime Coverage Section)

| | |
|---|---|
| **(a) Percentage of Full Annual Premium for; 1 Year:** | *TBD* |
| **(b) 2 Years:** | *TBD* |
| **(c) 3 Years:** | *TBD* |
| **(d) 4 Years:** | *TBD* |
| **(e) 5 Years:** | *TBD* |
| **(f) 6 Years:** | *TBD* |
| **(g) Percentage of Full Annual Premium for unlimited duration:** | *TBD* |

*1492332*

ITEMS (continued)

**NAME AND ADDRESS OF INSURER**

*National Union Fire Insurance Company of Pittsburgh, Pa.*
*175 Water Street*
*New York, NY 10038-4969*

**This policy is issued only by the insurance company indicated in this Item 8(a).**

**NOTICE OF CLAIMS AND CIRCUMSTANCES SEND TO:**
*AIG, Financial Lines Claims*
*P.O. Box 25947*
*Shawnee Mission, KS 66225*

**Reference:** *01-541-71-46*
**Reference:** **[ Coverage Section]**

PRODUCER: *EQUITY RISK PARTNERS, INC.*
PRODUCER LICENSE NO.: *On File with Carrier*
ADDRESS:    *200 W. MADISON, SUITE 3450*
            *CHICAGO, IL 60606*

*1492332*

© All rights reserved.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____                                        _____
PRESIDENT                                                                              SECRETARY

_____
AUTHORIZED REPRESENTATIVE

_____    _____    _____
COUNTERSIGNATURE          DATE               COUNTERSIGNED AT

*1492332*

104892 (4/10)    **BRANCH**Archive Copy

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *OC Listing, Inc*


Policy Number: *01-541-71-46*
Policy Period Effective Date From: *October 22, 2013*    To: *October 22, 2014*

*Archive Copy*



**PRIVATEEDGE PLUS**

**GENERAL TERMS AND CONDITIONS - STATE OF CALIFORNIA**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

## 1. TERMS AND CONDITIONS

These **General Terms and Conditions** shall be applicable to all **Coverage Sections** except the **Crime Coverage Section**. Terms appearing in these **General Terms and Conditions** which are defined in a **Coverage Section** shall have the meaning provided for such terms in such **Coverage Section** for purposes of coverage provided under such **Coverage Section**. Any reference in these **General Terms and Conditions** to "all **Coverage Sections**" shall not refer to the **Crime Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

## 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy, employment practices liability policy, professional liability policy, employed lawyers policy or crime policy issued by the **Insurer**, or any of its affiliates, of which this policy is in whole or part a renewal or replacement or which it succeeds in time.

(b) "**Company**" means the **Named Entity** and any **Subsidiary** thereof.  In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term "**Company**" shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

(c) "**Continuity Date**" means the date set forth in Item 3 of the Declarations with respect to each **Coverage Section**.

(d) "**Coverage Section**" means each **Coverage Section** that is purchased by the **Insured** as indicated in Item 3 of the Declarations.

(e) "**Discovery Period**" means **Discovery Period**, as that term is defined in Clause 8 of these **General Terms and Conditions**.

(f) "**Domestic Partner**" means any natural person legally recognized as a domestic or civil union partner under: (i) the provisions of any applicable federal, state or local law; or (ii) the provisions of any formal program established by the **Company**.

(g) "**Insurer**" means the insurance company indicated in the Declarations.

(h) "**Management Control**" means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of

*BRANCH*
*Archive Copy* GENERAL TERMS AND CONDITIONS

© All rights reserved.

a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

(i)  "**Named Entity**" means the entity listed in Item 1 of the Declarations.

(j)  "**Policy Aggregate Limit of Liability**" means the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations.

(k)  "**Policy Period**" means the period of time from the inception date stated in Item 2 of the Declarations to the earlier of the expiration date stated in Item 2 of the Declarations or the effective date of cancellation of this policy.

(l)  "**Related Wrongful Act(s)**" means **Wrongful Act(s)** which are the same, related or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts.  **Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(m) "**Separate Limit of Liability**" means the applicable **Separate Limit of Liability**, if any, stated in Item 3 of the Declarations.

(n)  "**Shared Limit of Liability**" means the applicable **Shared Limit of Liability**, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Shared Limit of Liability** in the Declarations.

(o)  "**Subsidiary**" means:

(i)  any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** has or had **Management Control** ("**Controlled Entity**") on or before the inception date of the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**;

(ii)  any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**; and

(iii)  any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

Notwithstanding the foregoing, coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

3.  **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claim** made against: (i) the estates, heirs, or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an

104890 (4/10)              **BRANCH**              2              ◊ All rights reserved.
                           **Archive Copy** GENERAL TERMS AND CONDITIONS

**Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, this extension shall not afford coverage for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

**4.  LIMITS OF LIABILITY (FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)**

The **Policy Aggregate Limit of Liability** is the maximum limit of the **Insurer's** liability for all **Loss** under all **Coverage Sections** combined arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); provided, however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**.

If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**. Each **Separate Limit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** as therein stated.

If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Shared Limit of Liability** for the **Policy Period**. Each **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 6(b) or 6(c) of these **General Terms and Conditions** is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** and subject to any applicable **Separate Limit of Liability** or **Shared Limit of Liability**.

**Defense Costs** are not payable by the **Insurer** in addition to the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Policy Aggregate Limit of Liability** for **Loss** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability**. Amounts incurred for **Defense Costs** shall be applied against the Retention.

**5.  RETENTION CLAUSE**

The Retentions stated in the Declarations are separate Retentions pertaining only to the **Coverage Section** for which they are stated in the Declarations. The application of a Retention to **Loss** under

one **Coverage Section** shall not reduce the Retention under any other **Coverage Section**.

In the event a **Claim** triggers a Retention in multiple **Coverage Sections**, then the following shall apply:

(a) with regard to **Loss** which is payable under any **Coverage Section** which is subject to a **Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Section** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Section**; and

(b) with regard to **Loss** which is payable under any **Coverage Sections** which are subject to a **Shared Limit of Liability**, the highest applicable Retention shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

## 6. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the addressee and at the address identified in Item 9(b) of the Declarations. Notice shall include and reference this policy number as indicated in the Declarations, as well as the **Coverage Sections** under which the **Claim** is being noticed. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

The following shall apply:

(a) The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **Crisis Management Event** as soon as practicable after: (i) the **Company's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis Management Event** commences, but in all events a **Claim** must be reported no later than either:

   (i) anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

   (ii) within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 6(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

104890 (4/10)          *BRANCH*          4          ◊ All rights reserved.
          *Archive Copy*GENERAL TERMS AND CONDITIONS

(d) Any matter which could involve the payment of **Voluntary Compliance Loss** under the **FLI Coverage Section** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause 6(a)(1) and 6(a)(2) above.

## 7. CANCELLATION CLAUSE

This policy or any individual **Coverage Section** may be canceled by the **Named Entity** at any time by mailing prior written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective, or by surrender thereof to the **Insurer** or its authorized agent. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the policy or applicable **Coverage Sections**.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified or other first class mail, at the **Named Entity's** address as stated in Item 1 of the Declarations, written notice stating when, not less than ten (10) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy or any **Coverage Section** shall be canceled by the **Named Entity**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 8. DISCOVERY CLAUSE

If the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy or any **Coverage Section**, then, solely with regard to the policy or **Coverage Section** which was canceled or nonrenewed, the **Named Entity** shall have the right, upon payment of the applicable "**Additional Premium Amount**" described below, to a period of up to six (6) years or of unlimited duration following the effective date of such cancellation or nonrenewal (herein referred to as the "**Discovery Period**"), in which to give the **Insurer** written notice of **Claims** first made against any **Insured** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by the canceled or nonrenewed policy or **Coverage Section**, as applicable. The rights contained in this Clause 8 shall terminate, however, unless written notice of such election together with the **Additional Premium Amount** due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for the elected **Discovery Period** shall be the "**Full Annual Premium**" (as defined below) multiplied by the applicable percentage amount indicated in Item 8 of the Declarations for the length time of elected for the **Discovery Period**. If the applicable subsection of Item 8 of the Declaration states "to be determined", then the **Additional Premium Amount** for such **Discovery Period** shall be an amount determined by the **Insurer** in its sole and absolute discretion.

*BRANCH*
*Archive Copy*                    ◈ All rights reserved.

As used herein, **"Full Annual Premium"** means:

(a) with regard to a canceled or nonrenewed policy, the total annual premium charged for this policy; or

(b) with regard to a canceled or nonrenewed **Coverage Section**, the total annual premium charged for such **Coverage Section**.

In the event of a **Transaction**, as defined in Clause 9 of these **General Terms and Conditions**, the **Named Entity** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of up to six (6) years or for such longer or shorter period as the **Named Entity** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable, except that the **Insurer** may cancel the **Discovery Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## 9. CHANGE IN CONTROL OF NAMED ENTITY

If during the **Policy Period**:

(a) the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(b) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(either of the above events herein referred to as the "**Transaction**"),

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**.

This policy and any purchased **Coverage Section** may not be canceled after the effective time of the **Transaction**. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 8 of these **General Terms and Conditions**.

The **Named Entity** shall give the **Insurer** written notice of the **Transaction** as soon as practicable, but not later than thirty (30) days after the effective date of the **Transaction**.

## 10. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to each **Insured's** rights of recovery thereof, and each **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insured**. In no event, however, shall subrogation be had against any **Individual Insured** under this policy, unless such **Individual Insured** has been convicted of a criminal act, or been determined by a

**BRANCH Archive Copy**                                ◊ All rights reserved.

final adjudication to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or determined by a final adjudication to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause 10 and any other rights the **Insurer** may have under applicable law.

## 11. OTHER INSURANCE

With respect to all **Coverage Sections**, other than the **EPL Coverage Section**, such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** provided by this policy. This policy specifically shall be excess of any other policy pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

Such insurance as is provided by the **EPL Coverage Section** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Sections**, in the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the definition of "**Employee**" in the applicable **Coverage Section**, coverage as is afforded by this policy shall be specifically excess of any: (i) indemnification provided by such **Outside Entity** or leasing company; and (ii) any other insurance provided to such **Outside Entity**, leasing company or independent contractor.

Further, in the event other insurance is provided to the **Outside Entity**, leasing company or independent contractor referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the **Insurer** or any member company of AIG Property Casualty Inc. ("AIG") (or would be provided but for the application of the Retention, exhaustion of the limit of liability or failure to submit a notice of a **Claim**), then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by AIG, shall not exceed the greater of (i) the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** of this policy, or (ii) the limit of liability of such other **AIG** insurance policy.

## 12. NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Clause 6 of these **General Terms and Conditions**, all notices required under this policy to be given by the **Insured** to the **Insurer** shall be given in writing to the **Insurer** at the address stated in Item 9(a) of the Declarations. It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of a **Claim**, the giving and receiving of notice of cancellation and

104890 (4/10)      **BRANCH**                    7                    ⊕ All rights reserved.
                   **Archive Copy**GENERAL TERMS AND CONDITIONS

nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

## 13. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

## 14. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's ("**AAA**") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(a) either party shall have the right to commence a judicial proceeding; or

(b) either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows: (i) the **Insured** shall select one (1) arbitrator; (ii) the **Insurer** shall select one (1) arbitrator; and (iii) said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least ninety (90) days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation.

The non-binding mediation may be commenced in New York, Atlanta, Georgia, Chicago, Illinois, Denver, Colorado or in the state indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding or the selection of mediators or arbitrators.

## 15. ACTION AGAINST INSURER

Except as provided in Clause 14 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the

*BRANCH*
*Archive Copy*  GENERAL TERMS AND CONDITIONS

**Insurer.**

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or the **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 16. WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

## 17. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

[The balance of this page is intentionally left blank.]

*BRANCH*
*Archive Copy* GENERAL TERMS AND CONDITIONS

⊕ All rights reserved.



## National Union Fire Insurance Company of Pittsburgh, Pa. ®

A capital stock company

### PrivateEdge Plus

### Directors, Officers and Private Company Liability Insurance
### ("D&O Coverage Section")

**Notice:** Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this D&O Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this D&O Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

### 1.  INSURING AGREEMENTS

With respect to Coverage A, B and D and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this **D&O Coverage Section** affords the following coverage:

### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This **D&O Coverage Section** shall pay the **Loss** of an **Individual Insured** of the **Company** arising from a **Claim** made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Company** has indemnified such **Individual Insured**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

### COVERAGE B: PRIVATE COMPANY INSURANCE

This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

(i)  **Claim** made against the **Company**, or

(ii) **Claim** made against an **Individual Insured**,

for any **Wrongful Act**, but, in the case of Coverage B(ii) above, only when and to the extent that the **Company** has indemnified the **Individual Insured** for such **Loss**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

### COVERAGE C: CRISISFUND® INSURANCE

This **D&O Coverage Section** shall pay the **Crisis Management Loss** of a **Company** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the **Crisis Management Fund**; provided that payment of any **Crisis Management Loss** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this **D&O Coverage Section** or at law. This Coverage C shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being first made.

### COVERAGE D: COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND

This **D&O Coverage Section** shall pay the **Costs of Investigation** of the **Company** arising from a **Company Shareholder Derivative Investigation** in response to a **Derivative Demand**,

D&O COVERAGE SECTION
© All rights reserved.

up to the amount set forth in Item 7(d) of the Declarations. Payment of **Costs of Investigation** to a **Company** shall be made in accordance with and subject to Clause 8 of this **D&O Coverage Section**.

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by this **D&O Coverage Section** in accordance with and subject to Clause 7 of this **D&O Coverage Section**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, prior to its final disposition. Selection of counsel to defend a **Securities Claim** shall be made in accordance with Clause 9 of this **D&O Coverage Section**.

With respect to Coverage D above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Company Shareholder Derivative Investigation** against its own **Executives**; provided, however, that the **Insurer** shall be entitled to effectively associate in the investigation and evaluation of, and the negotiation of any settlement of, any such **Company Shareholder Derivative Investigation**.

2. **DEFINITIONS**

(a) "**Affiliate**" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b) "**Claim**" means:

  (i) a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

  (ii) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    (1) service of a complaint or similar pleading;

    (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (3) receipt or filing of a notice of charges; or

  (iii) a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

    (1) once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition 2(b)(ii) may be commenced; or

    (2) in the case of an investigation by the Securities Exchange Commission ("SEC") or a similar state or foreign government authority, after:

      (a) the service of a subpoena upon such **Individual Insured**; or

      (b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**.

The term "**Claim**" shall also include any **Securities Claim** and any **Derivative Demand**.

(c) "**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

D&O COVERAGE SECTION
© All rights reserved.

(d) **"Company Shareholder Derivative Investigation"** means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

(e) **"Costs of Investigation"** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Company Shareholder Derivative Investigation**.

(f) **"Crisis Management Event"** means **Crisis Management Event**, as that term is defined in Appendix D attached to this policy.

(g) **"Crisis Management Fund"** means the dollar amount set forth in Item 7(b) of the Declarations.

(h) **"Crisis Management Loss"** means **Crisis Management Loss**, as that term is defined in Appendix D attached to this policy.

(i) **"Crisis Management Services"** means **Crisis Management Services**, as that term is defined in Appendix D attached to this policy.

(j) **"D&O Punitive Damages Sublimit of Liability"** means the **D&O Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(k) **"Defense Costs"** means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(l) **"Derivative Demand"** means a written demand by shareholders upon the board of directors (or equivalent management body) of a **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(m) **"Employee"** means any past, present or future employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee. An individual who is leased to the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such leased individual in the same manner as is provided to the **Company's** employees. Any other individual who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such individual in the same manner as that provided to the **Company's** employees, pursuant to a written contract.

(n) **"Executive"** means:

(i) any past, present or future duly elected or appointed director, officer, management committee member or member of the Board of Managers;

D&O COVERAGE SECTION
© All rights reserved.

(ii) any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (n)(i); or

(iii) any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(o) **"Financial Insolvency"** means the: (i) appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; or (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii), as to both (i) or (ii), any equivalent events outside the United States of America.

(p) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(q) **"Foreign Policy"** means the **Insurer's** or any other company of AIG Property Casualty Inc.'s ("AIG") standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **D&O Coverage Section**. If more than one such policy exists, then **"Foreign Policy"** means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the **Insurer** or any other company of **AIG**. The term "Foreign Policy" shall not include any partnership managerial, pension trust or professional liability coverage.

(r) **"Indemnifiable Loss"** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(s) **"Individual Insured"** means any:

(i) **Executive** of a **Company**;

(ii) **Employee** of a **Company**; or

(iii) **Outside Entity Executive**.

(t) **"Insured"** means:

(i) an **Individual Insured**; or

(ii) a **Company**.

(u) **"Loss"** means damages, judgments, settlements, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or (iv) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (u)(i) through (u)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a), 4(b) and 4(c) of this **D&O Coverage Section**, punitive, exemplary and multiple damages. As more fully set forth in Clause 5. "LIMIT OF LIABILITY" of this **D&O Coverage Section**, coverage under this **D&O Coverage Section** for punitive, exemplary and multiple damages is subject to any applicable **D&O Punitive Damages Sublimit of Liability** or **Shared Punitive Damages Sublimit of Liability**. The enforceability of the first sentence of this paragraph shall be

D&O COVERAGE SECTION
◊ All rights reserved.

governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

(v) "**Non-Indemnifiable Loss**" means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, bylaws, operating agreement or similar document of a **Company**.

(w) "**Outside Entity**" means:

(i) any not-for-profit organization; or

(ii) any other corporation, partnership, joint venture or other organization listed as an "**Outside Entity**" in an endorsement to this **D&O Coverage Section**.

(x) "**Outside Entity Executive**" means any: (i) **Executive** of the **Company** serving in the capacity as director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the specific request or direction of the **Company**; or (ii) any other person listed as an **Outside Entity Executive** in an endorsement to this **D&O Coverage Section**. It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request or direction of the **Company**," this **D&O Coverage Section** shall abide by the determination of the **Company** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **D&O Coverage Section** shall apply as if the **Company** determined that such **Individual Insured** was not acting at the **Company's** specific request or direction.

(y) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(z) "**Securities Claim**" means a **Claim** made against any **Insured**:

(i) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

(1) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

(2) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or

(ii) brought derivatively on the behalf of a **Company** by a security holder of such **Company**.

(aa) "**Shared Punitive Damages Sublimit of Liability**" means the **Shared Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(bb) "**Third Party Violation**" means any actual or alleged harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise) or unlawful discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**.

(cc) "**Wrongful Act**" means:

D&O COVERAGE SECTION
© All rights reserved.

(i) with respect to any **Executive** or **Employee** of a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** solely by reason of his or her status as an **Executive** or **Employee** of a **Company**;

(ii) with respect to a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company**; or

(iii) with respect to service on an **Outside Entity**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Outside Entity Executive** in his or her capacity as such.

## 3. WORLDWIDE EXTENSION

For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; provided however, that this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss** and other amounts under this **D&O Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Section** (subject to the terms, conditions and limitations of this **D&O Coverage Section**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to: (i) the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication establishes that such Section 16(b) violation occurred; or (ii) the payment to any **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, if any final adjudication establishes such payment was illegal;

(c) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent or dishonest act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal, deliberate fraudulent or dishonest act or willful violation of statute, rule or law was committed;

D&O COVERAGE SECTION
© All rights reserved.

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act(s)** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (i) litigation; or (ii) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act(s)** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **D&O Coverage Section.**

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

(h) for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company**, or any **Executive** of the **Outside Entity** or the **Company**; provided, however, this exclusion shall not apply to:

   (i) any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Section**;

   (ii) in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Outside Entity**;

   (iii) any **Claim** brought by any past **Executive** of an **Outside Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Outside Entity** for at least four (4) years prior to such **Claim** being first made against any person; or

   (iv) any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(i) which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

   (i) any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

D&O COVERAGE SECTION
© All rights reserved.

(ii) in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Company**;

(iii) any **Claim** brought by any past **Executive** of a **Company** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for a **Company** for at least four (4) years prior to such **Claim** being first made against any person; or

(iv) any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) alleging, arising out of, based upon or attributable to any public offering of securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, this exclusion will not apply to:

(i) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any public offering exempted pursuant to Section 3(b), together with full particulars and as soon as practicable, but not later than thirty (30) days after the effective date of the public offering;

(ii) any public offering of securities (other than a public offering described in subparagraph 4(j)(i) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within thirty (30) days prior to the effective time of such public offering: (1) the **Named Entity** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto; and (2) the **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the **Named Entity** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to subpart 4(j)(ii)(1) above, then the **Insurer** must offer a quote for coverage under this paragraph; or

(iii) any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering ("**IPO**") and which occurred at any time prior to 12:01 a.m. on the date the initial public offering commences ("**IPO Effective Time**"), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; provided, however that the coverage otherwise afforded under this subparagraph (iii) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; provided further, that coverage shall not be deemed void *ab initio* if (1) the **Claim** is first made and reported pursuant to Clause 6(a) of the **General Terms and Conditions** prior to the **IPO Effective Time**, and (2) a public company D&O policy is not applicable to such **Claim**;

(k) alleging, arising out of, based upon or attributable to the purchase by a **Company** of securities of a "**Publicly Traded Entity**" in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**; provided, however, this exclusion shall not apply in the event that within thirty (30) days prior to it becoming an **Affiliate** or **Subsidiary**, the **Named Entity** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this **D&O Coverage Section**

D&O COVERAGE SECTION
© All rights reserved.

required by the **Insurer** relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to the transaction. An entity is a **Publicly Traded Entity** if any securities of such entity have previously been subject to a public offering;

(l) for bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to **Securities Claims;**

(m) for emotional distress or mental anguish, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any **Securities Claim;**

(n) for: (i) any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants;** or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants;** provided, however, this exclusion shall not apply to:

　(1) **Non-Indemnifiable Loss,** other than **Non-Indemnifiable Loss** constituting **Cleanup Costs;** or

　(2) **Loss** in connection with a **Securities Claim,** other than **Loss** constituting **Clean-up Costs;**

(o) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

(p) alleging, arising out of, based upon or attributable to the ownership, management, maintenance or control by the **Company** of any captive insurance company or entity, including, but not limited, to any **Claim** alleging the insolvency or bankruptcy of the **Named Entity** as a result of such ownership, operation, management or control;

(q) alleging, arising out of, based upon, or attributable to the employment of any individual or any employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim;

(r) alleging, arising out of, based upon, or attributable to a **Third Party Violation;** provided, however, this exclusion shall not apply to a **Securities Claim;**

(s) alleging, arising out of, based upon, or attributable to:

　(i) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated;

　(ii) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, members, principal shareholders, owners or employees, or affiliates (as that term is defined in the Securities Exchange Act of 1934, including any of their officers, directors, agents, owners, partners, representatives, principal shareholders or employees) of any customers of the **Company** or any members of their family or any entity with which they are affiliated; or

D&O COVERAGE SECTION
© All rights reserved.

(iii) political contributions, whether domestic or foreign; or

(t) with respect to Coverage B(i) only:

    (i) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

    (ii) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

    (iii) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement; or

    (iv) seeking fines or penalties or non-monetary relief against the **Company**; provided, however, that this exclusion shall not apply to any **Securities Claim**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 4(d), 4(e), 4(h), 4(i) and 4(t): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer, chief operating officer or chief financial officer (or equivalent positions) of the **Company** shall be imputed to the **Company**.

## 5.  LIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions:**

### CRISISFUND® INSURANCE

The maximum limit of the **Insurer's** liability for all **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(b) of the Declarations as the **Crisis Management Fund**. This **Crisis Management Fund** shall be the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Crisis Management Loss**, regardless of the number of **Crisis Management Events** occurring during the **Policy Period**; provided, however, the **Crisis Management Fund** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

### COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND

The maximum limit of the **Insurer's** liability for **Costs of Investigation** arising from all **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(d) of the Declarations (the "**Costs of Investigation Sublimit of Liability**"). The **Costs of Investigation Sublimit of Liability** is the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Costs of Investigation** regardless of the number of such **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Company Shareholder Derivative Investigations**; provided, however, that the **Costs of Investigation Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

D&O COVERAGE SECTION
© All rights reserved.

**PUNITIVE DAMAGES SUBLIMIT OF LIABILITY**

If Item 7(c) of the Declarations indicates that the **D&O Punitive Damages Sublimit of Liability** was elected, then the **D&O Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability for punitive, exemplary and multiple damages under this **D&O Coverage Section**. If Item 7(c) of the Declarations indicates that a **Shared Punitive Damages Sublimit of Liability** was elected, then the **Shared Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability under both this **D&O Coverage Section** and the **EPL Coverage Section** combined for punitive, exemplary and multiple damages. If Item 7(c) of the Declarations indicates that no sublimit of liability is applicable to punitive damages, then neither the **D&O Punitive Damages Sublimit of Liability** nor the **Shared Punitive Damages Sublimit of Liability** is applicable to punitive, exemplary and multiple damages under this **D&O Coverage Section**. The **D&O Punitive Damages Sublimit of Liability** and the **Shared Punitive Damages Sublimit of Liability**, if applicable, shall be a part of and not in addition to **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

6. **RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations for this **D&O Coverage Section**, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

No Retention amount is applicable to **Crisis Management Loss** or **Non-Indemnifiable Loss**.

7. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 12 of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 7; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of**

D&O COVERAGE SECTION
© All rights reserved.

**Liability** or **Shared Limit of Liability** have been exhausted.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 7, the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Company**, severally according to their respective interests, in the event and to the extent that any such **Insured** or the **Company** shall not be entitled under the terms and conditions of this **D&O Coverage Section** to payment of such **Loss**.

The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation, including:

(a) cooperating with and helping the **Insurer**:

    (i) in making settlements, subject to subparagraph 7(b) below;

    (ii) in enforcing any legal rights the **Insured** may have against anyone who may be liable to the **Insured**;

    (iii) by attending depositions, hearings and trials; and

    (iv) by securing and giving evidence, and obtaining the attendance of witnesses; and

(b) taking such actions which, in such **Insured**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Section**, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 7, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **D&O Coverage Section**. In addition, the **Insured** shall not take any action, without the **Insurer**'s written consent, which prejudices the **Insurer**'s rights under this **D&O Coverage Section**.

This Clause 7 shall not be applicable to **Crisis Management Loss**.

8. **COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND COVERAGE PROVISION**

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **D&O Coverage Section** for reimbursement of its covered **Costs of Investigation** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the shareholders who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

D&O COVERAGE SECTION
© All rights reserved.

Nothing in this **D&O Coverage Section**, including Coverage D, shall be construed to afford coverage under this **D&O Coverage Section** for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Costs of Investigation** incurred in a covered **Company Shareholder Derivative Investigation**. Payment of any **Costs of Investigation** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this policy or at law.

### 9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS

This Clause 9 applies only to **Securities Claims**.

Affixed as Appendix A hereto and made a part of this **D&O Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** against an **Insured** pursuant to the terms set forth in this Clause.

In the event the **Insurer** has assumed the defense pursuant to Clause 7. of this **D&O Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Securities Claim**, then the **Insureds** shall select a Panel Counsel Firm to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Securities Claim** is brought. In the event a **Securities Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is maintained or where the corporate headquarters or state of formation of the **Named Entity** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Entity**, assign a non-Panel Counsel Firm of the **Insurer's** choice in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Securities Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix A without the consent of the **Named Entity**.

### 10. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this **D&O Coverage Section**, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this **D&O Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **D&O Coverage Section** and are to be considered as incorporated into this **D&O Coverage Section**.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this **D&O Coverage Section** shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this **D&O Coverage Section** shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any

D&O COVERAGE SECTION
© All rights reserved.

**Insured** shall not be imputed to any other **Insured**.

## 11. ORDER OF PAYMENTS

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **D&O Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section**, then the **Insurer** shall:

(a) first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** is available after payment of such **Loss**,

(b) then pay such **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**, and

(c) then pay such **Loss** for which coverage is provided under Coverage B(i), C or D of this **D&O Coverage Section**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Section** (including those circumstances described in the first paragraph of this Clause 11), the **Insurer** shall at the written request of the **Named Entity**:

(a) first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then

(b) either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, C or D of this **D&O Coverage Section**.

In the event that the **Insurer** withholds payment under Coverage B, C or D of this **D&O Coverage Section** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Entity**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** under any **Claim** covered under this **D&O Coverage Section** pursuant to Coverage A of this **D&O Coverage Section**.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Section** pursuant to this Clause 11.

D&O COVERAGE SECTION
© All rights reserved.



## National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

### PrivateEdge Plus℠

### Employment Practices Liability Insurance
### ("EPL Coverage Section")

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this EPL Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this EPL Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

1. **INSURING AGREEMENTS**

   With respect to the Insuring Agreement and the Defense Provisions of this Clause 1, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this **EPL Coverage Section** affords the following coverage:

   This **EPL Coverage Section** shall pay the **Loss** of an **Insured** arising from a **Claim** first made against such **Insured** for any **Wrongful Act**. The **Insurer** shall, in accordance with and subject to Clause 6 of this **EPL Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

   **DEFENSE PROVISIONS**

   The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by this **EPL Coverage Section** in accordance with Clause 6 of this **EPL Coverage Section**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, prior to its final disposition. Selection of counsel to defend a **Designated Employment Practices Claim** shall be made in accordance with Clause 7 of this **EPL Coverage Section**.

2. **DEFINITIONS**

   (a) "**Claim**" means:

   (i)   a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

   (ii)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

   (1) service of a complaint or similar pleading;

   (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

   (3) receipt or filing of a notice of charges; or

   (iii) an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("**EEOC**"), or similar state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

EPL COVERAGE SECTION
Ⓒ All rights reserved.

However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(b) "**Defense Costs**" means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(c) "**Designated Employment Practices Claim**" means a **Claim**: (i) alleging discrimination or **Retaliation**; or (ii) that is certified as, or which is seeking certification as, a class action.

(d) "**EPL Punitive Damages Sublimit of Liability**" means the **EPL Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(e) "**Employee**" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such leased individual in the same manner as is provided to the **Company's** employees. Any other individual who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only if the **Company** provides indemnification to such individual in the same manner as that provided to the **Company's** employees, pursuant to a written contract.

(f) "**Employment Practices Violation**" means any actual or alleged:

(i) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(ii) harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(iii) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(iv) **Retaliation**;

(v) employment-related misrepresentation(s) to an **Employee** of the **Company** or applicant for employment with the **Company** or an **Outside Entity**;

(vi) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(vii) wrongful failure to employ or promote;

(viii) wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(ix) wrongful discipline;

(x) failure to grant tenure; or

(xi) with respect to any of the foregoing items (i) through (x) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

℗ All rights reserved.

but only if the **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**, or applicants for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

(g) "**Executive**" means:

    (i) any past, present or future duly elected or appointed director, officer, management committee member or member of the Board of Managers;

    (ii) any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (g)(i); or

    (iii) any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(h) "**Financial Insolvency**" means the: (i) appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii), as to both (i) or (ii), any equivalent events outside the United States of America.

(i) "**Foreign Jurisdiction**" means any jurisdiction, other than the United States of America or any of its territories or possessions.

(j) "**Indemnifiable Loss**" means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(k) "**Individual Insured**" means any:

    (i) **Executive** of a **Company**;

    (ii) **Employee** of a **Company**; or

    (iii) **Outside Entity Executive**.

(l) "**Insured**" means:

    (i) an **Individual Insureds**; or

    (ii) a **Company**.

(m) "**Loss**" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; (iv) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (v) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; (vi) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (m)(i) through (m)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **EPL Coverage Section**, including, but not limited to, Exclusion 3(a) of this **EPL Coverage Section**, punitive, exemplary and multiple damages (including the multiple or

EPL COVERAGE SECTION
© All rights reserved.

liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). As more fully set forth in Clause 4. "PUNITIVE DAMAGES SUBLIMIT OF LIABILITY" of this **EPL Coverage Section**, coverage under this **EPL Coverage Section** for punitive, exemplary and multiple damages is subject to any applicable **EPL Punitive Damages Sublimit of Liability** or **Shared Punitive Damages Sublimit of Liability**. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

(n) "**Outside Entity**" means:

  (i) any not-for-profit organization; or

  (ii) any other corporation, partnership, joint venture or other organization listed by endorsement to this policy or **EPL Coverage Section**.

(o) "**Outside Entity Executive**" means any **Executive** of the **Company** serving in the capacity as director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the specific request or direction of the **Company**. It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request or direction of the **Company**," this **EPL Coverage Section** shall abide by the determination of the **Company** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **EPL Coverage Section** shall apply as if the **Company** determined that such **Individual Insured** was not acting at the **Company's** specific request or direction.

(p) "**Retaliation**" means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of the **Company** or an **Outside Entity**.

(q) "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability, Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(r) "**Shared Punitive Damages Sublimit of Liability**" means the **Shared Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(s) "**Third Party Violation**" means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(f)(ii) and 2(f)(iii) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers.

(t) "**Wrongful Act**" means any actual or alleged (i) **Employment Practices Violation**, or (ii) **Third Party Violation**.

3. **EXCLUSIONS**

EPL COVERAGE SECTION
© All rights reserved.

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the **Insured** if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act was committed;

(b) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Acts** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **EPL Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time;

(c) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (i) litigation; or (ii) **EEOC** (or similar state, local or foreign agency) proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(d) with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **EPL Coverage Section**;

(e) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

(f) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to, loss of use of or destruction of any tangible property;

(g) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(h) alleging, arising out of, based upon, attributable to or in any way relating to:

(i) the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(ii) improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or

(iii) failure to provide or enforce legally required meal or rest break periods;

provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(i) alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(j) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement; provided, however, this

EPL COVERAGE SECTION
© All rights reserved.

exclusion shall not apply to:

    (i) liability which would have attached in the absence of such express contract or agreement; or

    (ii) **Loss** constituting **Defense Costs**;

(k) alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company**, an **Outside Entity** or an affiliate of the **Named Entity** in their capacity as such in the form of a shareholder class, direct or derivative action on behalf of such **Company**, **Outside Entity** or affiliate.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 3(b), 3(c), and 3(d): (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer, chief operating officer or chief financial officer (or equivalent positions) of the **Company** shall be imputed to the **Company**.

## 4. PUNITIVE DAMAGES SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions**:

If Item 7(c) of the Declarations indicates that the **EPL Punitive Damages Sublimit of Liability** was elected, then the **EPL Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability for punitive, exemplary and multiple damages under this **EPL Coverage Section**. If Item 7(c) of the Declarations indicates that a **Shared Punitive Damages Sublimit of Liability** was elected, then the **Shared Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability under both this **EPL Coverage Section** and the **D&O Coverage Section** combined for punitive, exemplary and multiple damages. If Item 7(c) of the Declarations indicates that no sublimit of liability is applicable to punitive damages, then neither the **EPL Punitive Damages Sublimit of Liability** nor the **Shared Punitive Damages Sublimit of Liability** is applicable to punitive, exemplary and multiple damages under this **EPL Coverage Section**. The **EPL Punitive Damages Sublimit of Liability** and the **Shared Punitive Damages Sublimit of Liability**, if applicable, shall be a part of and not in addition to **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **EPL Coverage Section** as set forth in Item 3 of the Declarations.

## 5. RETENTION CLAUSE

The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations for this **EPL Coverage Section**, such Retention amount to be borne by the **Company** or the **Insureds** and shall remain uninsured, with regard to all: (1) **Indemnifiable Loss**; or (2) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Defense Costs** and pay any other covered **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Defense Costs** and any other **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

EPL COVERAGE SECTION
© All rights reserved.

**6. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 12 of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 6; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability, Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of (or failure or refusal to accept within the time prescribed in this Clause 6, below) a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 6, the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this **EPL Coverage Section** to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this **EPL Coverage Section**. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 6, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **EPL Coverage Section**.

The **Insurer** shall have the right to effectively associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

In the event the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs**

EPL COVERAGE SECTION
© All rights reserved.

incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Company** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

7. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS**

This Clause applies only to **Designated Employment Practices Claims**.

Affixed as Appendix B hereto and made a part of this **EPL Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Designated Employment Practices Claim** against an **Insured** pursuant to the terms set forth in this Clause.

In the event the **Insurer** has assumed the defense pursuant to Clause 6 of this **EPL Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Designated Employment Practices Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Designated Employment Practices Claim** is brought. In the event a **Designated Employment Practices Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Designated Employment Practices Claim** is maintained or where the corporate headquarters or state of formation of the **Named Entity** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Entity**, assign a non-**Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Designated Employment Practices Claim** is brought to function as "local counsel" on the **Designated Employment Practices Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Designated Employment Practices Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix A without the consent of the **Named Entity**.

8. **REPRESENTATIONS AND SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this **EPL Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **EPL Coverage Section** and are to be considered as incorporated into this **EPL Coverage Section**.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this **EPL Coverage Section**

EPL COVERAGE SECTION
© All rights reserved.

shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this **EPL Coverage Section** shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

[The balance of this page is intentionally left blank.]

© All rights reserved.



## National Union Fire Insurance Company of Pittsburgh, Pa. ®

A capital stock company

### PrivateEdge Plus<sup>SM</sup>

### Commercial Crime Insurance
### ("Crime Coverage Section")

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, solely with respect to this **Crime Coverage Section**, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

Coverage is provided under the following Insuring Agreements for which a Per Occurrence Limit of Liability is shown on the Declarations and applies to loss that the **Insured** sustains resulting directly from an **Occurrence** taking place during the Policy Period shown in the Declarations, except as provided in Condition 6(a)(xv) or 6(a)(xvi), which is **Discovered** by the **Insured** during the Policy Period shown in the Declarations or during the period of time provided in Condition 6(a)(x):

### A. EMPLOYEE THEFT

The **Insurer** will pay for loss of or damage to **Money, Securities** and **Other Property** resulting directly from **Theft** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

### B. FORGERY OR ALTERATION

(i) The **Insurer** will pay for loss resulting directly from **Forgery** or alteration of checks, drafts, promissory notes, or similar written promises, orders to pay a sum certain in **Money** that are:

(1) made or drawn by or drawn upon the **Insured**; or

(2) made or drawn by one acting as the **Insured**'s agent; or

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

(ii) If the **Insured** is sued for refusing to pay any instrument covered in Insuring Agreement 1.B.(i) above, on the basis that it has been forged or altered, and the **Insured** has the **Insurer**'s written consent to defend against the suit, the **Insurer** will pay for any reasonable legal expenses that the **Insured** incurs and pays in that defense. The amount that the **Insurer** will pay is in addition to the Per Occurrence Limit of Liability applicable to this Insuring Agreement.

### C. INSIDE THE PREMISES - THEFT OF MONEY AND SECURITIES

(i) The **Insurer** will pay for loss of **Money** and **Securities** inside the **Premises** or **Banking Premises**:

(1) resulting directly from **Theft** committed by a person present inside such **Premises** or **Banking Premises**; or

(2) resulting directly from disappearance or destruction.

(ii) The **Insurer** will pay for loss from damage to the **Premises** or its exterior resulting

CRIME COVERAGE SECTION
© All rights reserved.

, directly from an actual or attempted **Theft of Money** and **Securities**, if the **Insured** is the owner of the **Premises** or is liable for damage to it.

(iii) The **Insurer** will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft** of or unlawful entry into those containers.

D. **INSIDE THE PREMISES - ROBBERY OR SAFE BURGLARY OF OTHER PROPERTY**

(i) The **Insurer** will pay for loss of or damage to **Other Property**:

(1) inside the **Premises** resulting directly from an actual or attempted **Robbery** of a **Custodian**; or

(2) inside the **Premises** in a safe or vault resulting directly from an actual or attempted **Safe Burglary**.

(ii) The **Insurer** will pay for loss from damage to the **Premises** or its exterior resulting directly from an actual or attempted **Robbery** or **Safe Burglary** of **Other Property**, if the **Insured** is the owner of the **Premises** or is liable for damage to it.

(iii) The **Insurer** will pay for loss of or damage to a locked safe or vault located inside the **Premises** resulting directly from an actual or attempted **Robbery** or **Safe Burglary**.

E. **OUTSIDE THE PREMISES**

(i) The **Insurer** will pay for loss of **Money** and **Securities** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from **Theft**, disappearance or destruction.

(ii) The **Insurer** will pay for loss of or damage to **Other Property** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from an actual or attempted **Robbery**.

F. **COMPUTER FRAUD**

The **Insurer** will pay for loss of or damage to **Other Property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises**:

(i) to a person (other than a **Messenger**) outside those **Premises**; or

(ii) to a place outside those **Premises**.

G. **FUNDS TRANSFER FRAUD**

The **Insurer** will pay for loss of **Funds** resulting directly from a **Fraudulent Instruction** directing a financial institution to transfer, pay or deliver **Funds** from the **Insured's Transfer Account**.

H. **MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY**

The **Insurer** will pay for loss resulting directly from the **Insured's** having accepted in good faith, in exchange for merchandise, **Money** or services:

(i) money orders issued by any post office, express company or bank that are not paid upon presentation; or

(ii) **Counterfeit Money** of any country that is acquired during the regular course of business.

2. **DEFINITIONS**

(a) "Banking Premises" means the interior of that portion of any building occupied by a

CRIME COVERAGE SECTION
© All rights reserved.

banking institution or similar safe depository.

(b) "**Counterfeit Money**" means an imitation of **Money** that is intended to deceive and to be taken as genuine.

(c) "**Custodian**" means the **Insured**, or any of the **Insured's** partners or **Members**, or any **Employee** while having care and custody of property inside the **Premises**, excluding any person while acting as a **Watchperson** or janitor.

(d) "**Discover**", "**Discovered**" or "**Discovery**" means the time when the **Insured** first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this **Crime Coverage Section** has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"**Discover**", "**Discovered**" or "**Discovery**" also means the time when the **Insured** first receives notice of an actual or potential claim in which it is alleged that the **Insured** is liable to a third party under circumstances which, if true, would constitute a loss under this **Crime Coverage Section**.

(e) "**Employee**" means:

(i) any natural person:

(1) while in the **Insured's** service and for sixty (60) days after termination of service, unless such termination is due to **Theft** or any dishonest act committed by the **Employee**;

(2) who the **Insured** compensates directly by salary, wages or commissions; and

(3) who the **Insured** has the right to direct and control while performing services for the **Insured**;

(ii) any natural person who is furnished temporarily to the **Insured**:

(1) to substitute for a permanent **Employee**, as defined in subparagraph 2(e)(i) above, who is on leave; or

(2) to meet seasonal or short-term work load conditions;

while that person is subject to the **Insured's** direction and control and is performing services for the **Insured**, excluding, however, any such person while having care and custody of property outside the **Premises**; or

(iii) any natural person who is leased to the **Insured** under a written agreement between the **Insured** and a labor leasing firm, to perform duties related to the conduct of the **Insured's** business, but does not mean a temporary **Employee** as defined in subparagraph 2(e)(ii) above;

(iv) any natural person who is:

(1) a trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any **Employee Benefit Plan**; and

(2) the **Insured's Manager** while that person is handling **Money** and **Securities** or **Other Property** of any **Employee Benefit Plan**.

(v) any natural person who is a former **Employee**, partner, **Member, Manager**, director or trustee retained as a consultant while performing services for the **Insured**;

(vi) any natural person who is a guest student or intern pursuing studies or duties;

(vii) any **Employee** of an entity merged or consolidated with the **Insured** prior to the

CRIME COVERAGE SECTION
© All rights reserved.

effective date of this **Crime Coverage Section**;

(viii) any of the **Insured's Managers**, directors, trustees or non-compensated officers while:

    (1) performing acts within the scope of the usual duties of an **Employee**; or

    (2) acting as a member of any committee duly elected or appointed by resolution of the **Insured's** board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on the **Insured's** behalf; or

(ix) any non-compensated natural person other than one who is a fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee**.

"**Employee**" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in this Paragraph (e).

(f) "**Employee Benefit Plan**" means any welfare or pension benefit plan shown by Endorsement attached to this policy that the **Insured** sponsors and that is subject to the Employee Retirement Income Security Act of 1974 ("**ERISA**") and any amendments thereto.

(g) "**Forgery**" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

(h) "**Fraudulent Instruction**" means:

    (i) an electronic, computer, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by the **Insured**, but which was, in fact, fraudulently transmitted by someone else without the **Insured's** knowledge or consent;

    (ii) a written instruction (other than those described in Insuring Agreement 1.B.) issued by the **Insured**, which was forged or altered by someone other than the **Insured** without the **Insured's** knowledge or consent, or which purports to have been issued by the **Insured**, but was, in fact, fraudulently issued without the **Insured's** knowledge or consent; or

    (iii) an electronic, computer, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the **Insured** which purports to have been transmitted by an **Employee** but which was, in fact, fraudulently transmitted by someone else without the **Insured's** or the **Employee's** knowledge or consent.

(i) "**Funds**" means **Money** and/or **Securities** in a **Transfer Account**.

(j) "**Insured**" means the **Named Entity**.

(k) "**Manager**" means a person serving in a directorial capacity for a limited liability company.

(l) "**Member**" means an owner of a limited liability company represented by its membership interest, who also may serve as a **Manager**.

(m) "**Messenger**" means the **Insured**, or a relative of the **Insured**, or any of the **Insured's** partners or **Members**, or any **Employee** while having care and custody of property outside the **Premises**.

(n) "**Money**" means:

    (i) currency, coins and bank notes in current use and having a face value; and

    (ii) travelers checks, register checks and money orders held for sale to the public.

(o) "**Occurrence**" means:

CRIME COVERAGE SECTION
© All rights reserved.

(i) as respects Insuring Agreement 1.A., "EMPLOYEE THEFT," of this **Crime Coverage Section**:

(1) an individual act;

(2) the combined total of all separate acts whether or not related; or

(3) series of acts whether or not related;

committed by the same **Employee** acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition 6(a)(xv) or 6(a)(xvi); or

(ii) as respects Insuring Agreement 1.B., "FORGERY OR ALTERATION," of this **Crime Coverage Section**:

(1) an individual act;

(2) the combined total of all separate acts whether or not related; or

(3) a series of acts whether or not related;

committed by the same person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition 6(a)(xv) or 6(a)(xvi); or

(iii) as respects all other Insuring Agreements of this **Crime Coverage Section**:

(1) an individual act or event;

(2) the combined total of all separate acts or events whether or not related; or

(3) a series of acts or events whether or not related;

committed by the same person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition 6(a)(xv) or 6(a)(xvi).

(p) "**Other Property**" means any tangible property other than **Money** and **Securities** that has intrinsic value. **Other Property** does not include intangible property, including, but not limited to, computer programs, electronic data or any other property excluded under this **Crime Coverage Section**.

(q) "**Pollution**" means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, soot, mold, spores, fungi, germs, fumes, acids, alkalis, chemicals and **Waste**. **Waste** includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(r) "**Premises**" means the interior of that portion of any building the **Insured** occupies in conducting the **Insured's** business.

(s) "**Robbery**" means the unlawful taking of property from the care and custody of a person by one who has:

(i) caused or threatened to cause that person bodily harm; or

(ii) committed an obviously unlawful act witnessed by that person.

(t) "**Safe Burglary**" means the unlawful taking of:

(i) property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

(ii) a safe or vault from inside the **Premises**.

◎ All rights reserved.

(u) **"Securities"** means negotiable and nonnegotiable instruments or contracts representing either **Money** or property and includes:

    (i) chips issued by the **Insured**, tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    (ii) evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Insured**;

    but does not include **Money**.

(v) **"Theft"** means the unlawful taking of **Money**, **Securities** or **Other Property** to the deprivation of the **Insured**. Solely with respect to Insuring Agreement 1.A., **Theft** shall also mean forgery.

(w) **"Transfer Account"** means an account maintained by the **Insured** at a financial institution from which the **Insured** can initiate the transfer, payment or delivery of **Funds**:

    (i) by means of electronic, computer, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    (ii) by means of written instructions (other than those described in Insuring Agreement 1.B.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

(x) **"Watchperson"** means any person the **Insured** retains specifically to have care and custody of property inside the **Premises** and who has no other duties.

## 3. EXCLUSIONS

This **Crime Coverage Section** does not apply to:

(a) Acts Committed By The Insured, The Insured's Partners Or The Insured's Members Loss resulting from **Theft** or any other dishonest act committed by:

    (i) the **Insured**; or

    (ii) any of the **Insured's** partners or **Members**;

    whether acting alone or in collusion with other persons.

(b) Acts Of Employees Learned Of By The Insured Prior To The Policy Period

Loss caused by an **Employee** if the **Employee** had also committed **Theft** or any other dishonest act prior to the effective date of this **Crime Coverage Section** and the **Insured** or any of the **Insured's** partners, **Members**, **Managers**, officers, directors or trustees, not in collusion with the **Employee**, learned of that **Theft** or dishonest act prior to the Policy Period shown in the Declarations.

(c) Acts Of Employees, Managers, Directors, Trustees Or Representatives

Loss resulting from **Theft** or any other dishonest act committed by any of the **Insured's Employees**, **Managers**, directors, trustees or authorized representatives:

    (i) whether acting alone or in collusion with other persons; or

    (ii) while performing services for the **Insured** or otherwise; except when covered under Insuring Agreement 1.A. of this **Crime Coverage Section**.

(d) Confidential Information

Loss resulting from:

    (i) the unauthorized disclosure of the **Insured's** confidential information including, but not

CRIME COVERAGE SECTION
© All rights reserved.

limited to, patents, trade secrets, processing methods or customer lists; or

(ii) the unauthorized use or disclosure of confidential information of another person or entity which is held by the **Insured** including, but not limited to, financial information, personal information, credit card information, identification information or similar non-public information.

(e) Governmental Action

Loss resulting from seizure or destruction of property by order of governmental authority.

(f) Indirect Loss

Loss that is an indirect result of an **Occurrence** covered by this **Crime Coverage Section** including, but not limited to, loss resulting from:

(i) the **Insured's** inability to realize income that the **Insured** would have realized had there been no loss of or damage to **Money, Securities or Other Property**;

(ii) payment of damages of any type for which the **Insured** is legally liable; provided, however, the **Insurer** will pay compensatory damages arising directly from a loss covered under this **Crime Coverage Section**; or

(iii) payment of costs, fees or other expenses the **Insured** incurs in establishing either the existence or the amount of loss under this **Crime Coverage Section**.

(g) Legal Fees, Costs And Expenses

Fees, costs and expenses incurred by the **Insured** which are related to any legal action, except when covered under Insuring Agreement 1.B.

(h) Nuclear Hazard

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

(i) Pollution

Loss or damage caused by or resulting from **Pollution**.

(j) War and Military Action

Loss or damage resulting from:

(i) war, including undeclared or civil war;

(ii) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(iii) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

(k) Automatic Teller Machines:

Loss of **Money** and **Securities** contained in any automatic teller machine ("ATM") or while being transported to or from any **ATM**. Such loss is excluded regardless of the cause, event, act, omission or failure which contributes to the loss, including, but not limited to, (i) any dishonesty, theft, disappearance, destruction, forgery, alternation, robbery or computer fraud by any person (whether or not an **Employee**) acting alone or in collusion with other persons, or (ii) any actual or alleged failure, malfunction or inadequacy of the **ATM**.

In all events, coverage under this **Crime Coverage Section** does not apply to the loss of

CRIME COVERAGE SECTION
© All rights reserved.

or damage to any **ATM**.

Insuring Agreement 1.A., "EMPLOYEE THEFT," of this **Crime Coverage Section** does not apply to:

(a) Inventory Shortages

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i) an inventory computation; or

(ii) a profit and loss computation.

However, where the **Insured** establishes wholly apart from such computations that the **Insured** has sustained a loss, then the **Insured** may offer the **Insured's** inventory records and actual physical count of inventory in support of the amount of loss claimed.

(b) Trading

Loss resulting directly or indirectly from trading, whether in the **Insured's** name or in a genuine or fictitious account.

(c) Warehouse Receipts

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

Insuring Agreements 1.C., "INSIDE THE PREMISES - THEFT OF MONEY AND SECURITIES," 1.D., "INSIDE THE PREMISES - ROBBERY OR SAFE BURGLARY OF OTHER PROPERTY," and 1.E., "OUTSIDE THE PREMISES," of this **Crime Coverage Section** do not apply to:

(a) Accounting Or Arithmetical Errors Or Omissions

Loss resulting from accounting or arithmetical errors or omissions.

(b) Exchanges Or Purchases

Loss resulting from the giving or surrendering of property in any exchange or purchase.

(c) Fire

Loss resulting from fire, however caused, except:

(i) loss from damage to a safe or vault; and

(ii) loss of or damage to **Money** and **Securities**.

(d) Money Operated Devices Loss of property contained in any money operated device unless the amount of **Money** deposited in it is recorded by a continuous recording instrument in the device.

(e) Motor Vehicles Or Equipment And Accessories

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

(f) Transfer Or Surrender Of Property

Loss of or damage to property after it has been transferred or surrendered to a person or place outside the **Premises** or **Banking Premises**:

(i) on the basis of unauthorized instructions;

(ii) as a result of a threat to do bodily harm to any person;

(iii) as a result of a threat to do damage to any property;

CRIME COVERAGE SECTION
© All rights reserved.

(iv) as a result of a threat to introduce a denial of service attack into the **Insured's** computer system;

(v) as a result of a threat to introduce a virus or other malicious instruction into the **Insured's** computer system which is designed to damage, destroy or corrupt data or computer programs stored within the **Insured's** computer system;

(vi) as a result of a threat to contaminate, pollute or render substandard the **Insured's** products or goods; or

(vii) as a result of a threat to disseminate, divulge or utilize:

(a) the **Insured's** confidential information; or

(b) weaknesses in the source code within the **Insured's** computer system.

Provided, however, this Exclusion does not apply under Insuring Agreement 1.E. of this **Crime Coverage Section** to loss of **Money, Securities** or **Other Property** while outside the **Premises** in the care and custody of a **Messenger** if the **Insured**:

(1) had no knowledge of any threat at the time the conveyance began; or

(2) had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

(g) Vandalism

Loss from damage to the **Premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **Other Property** by vandalism or malicious mischief.

(h) Voluntary Parting Of Title To Or Possession Of Property

Loss resulting from the **Insured**, or anyone acting on the **Insured's** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

Insuring Agreement 1.F., "COMPUTER FRAUD," of this **Crime Coverage Section** does not apply to:

(a) Credit Card Transactions

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

(b) Computer losses due to:

(i) loss of computer time or use;

(ii) unintentional errors or omissions; or

(iii) voluntary giving or surrendering of property in a purchase or exchange, whether legitimate or fraudulent.

(c) Inventory Shortages

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i) an inventory computation; or

(ii) a profit and loss computation.

Insuring Agreement 1.G., "FUNDS TRANSFER FRAUD," of this **Crime Coverage Section** does not apply to:

(a) Computer Fraud

CRIME COVERAGE SECTION
✪ All rights reserved.

Loss resulting from the use of any computer to fraudulently cause a transfer of **Other Property.**

(b) Loss due to:

    (i) unintentional errors or omissions; or

    (ii) voluntary giving or surrendering of property in a purchase or exchange, whether legitimate or fraudulent.

## 4. PER OCCURRENCE LIMIT OF LIABILITY

The most the **Insurer** will pay for all loss resulting directly from an **Occurrence** is the applicable Per Occurrence Limit of Liability shown in Item 5 of the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage of this **Crime Coverage Section**, the most the **Insurer** will pay for such loss shall not exceed the largest Per Occurrence Limit of Liability available under any one of those Insuring Agreements or Coverages.

## 5. DEDUCTIBLE

The **Insurer** will not pay for loss resulting directly from an **Occurrence** unless the amount of loss exceeds the applicable Deductible Amount shown in Item 5. of the Declarations. The **Insurer** will then pay the amount of loss in excess of the Deductible Amount, up to the applicable Per Occurrence Limit of Liability.

## 6. CONDITIONS

(a) CONDITIONS APPLICABLE TO ALL INSURING AGREEMENTS OF THIS CRIME COVERAGE SECTION:

    (i) ADDITIONAL PREMISES OR EMPLOYEES

        If, while this **Crime Coverage Section** is in force, the **Insured** establishes any additional **Premises** or hire additional **Employees**, other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such **Premises** and **Employees** shall automatically be covered under this **Crime Coverage Section**. Notice to the **Insurer** of an increase in the number of **Premises** or **Employees** need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

    (ii) CANCELLATION OF COVERAGE SECTION

        (1) The **Named Entity** shown in the Declarations may cancel this **Crime Coverage Section** by mailing or delivering to the **Insurer** advance written notice of cancellation.

        (2) The **Insurer** may cancel this **Crime Coverage Section** by mailing or delivering to the **Named Entity** written notice of cancellation at least:

            (a) ten (10) days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or

            (b) sixty (60) days before the effective date of cancellation if the **Insurer** cancels for any other reason.

        (3) The **Insurer** will mail or deliver the **Insurer's** notice to the **Named Entity's** last mailing address known to the **Insurer**.

        (4) Notice of cancellation of this **Crime Coverage Section** will state the effective date of cancellation. The Policy Period applicable to this **Crime Coverage Section** will end on that date.

CRIME COVERAGE SECTION
© All rights reserved.

(5) If this **Crime Coverage Section** is cancelled, the **Insurer** will send the **Named Entity** any premium refund due. If the **Insurer** cancels, the refund will be pro rata. If the **Named Entity** cancels, the refund may be less than pro rata. The cancellation will be effective even if the **Insurer** has not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

(iii) CHANGES

This **Crime Coverage Section** contains all the agreements between the **Insured** and the **Insurer** concerning the insurance afforded. The **Named Entity** shown in the Declarations is authorized to make changes in the terms of this **Crime Coverage Section** with the **Insurer's** consent. This **Crime Coverage Section's** terms can be amended or waived only by endorsement issued by the **Insurer** and made a part of this **Crime Coverage Section.**

(iv) CONCEALMENT, MISREPRESENTATION OR FRAUD

This **Crime Coverage Section** is void in any case of fraud by the **Insured** as it relates to this policy at any time. This **Crime Coverage Section** is also void if the **Named Entity** or any other **Insured**, at any time, intentionally conceals or misrepresents a material fact concerning:

(1) this **Crime Coverage Section;**

(2) the property covered under this **Crime Coverage Section;**

(3) the **Insured's** interest in the property covered under this **Crime Coverage Section;** or

(4) a claim under this **Crime Coverage Section.**

(v) CONSOLIDATION - MERGER OR ACQUISITION

If the **Insured** consolidates or merges with, or purchases or acquires the assets or liabilities of, another entity:

The **Insured** must give the **Insurer** written notice as soon as possible and obtain the **Insurer's** written consent to extend the coverage provided by this **Crime Coverage Section** to such consolidated or merged entity or such purchased or acquired assets or liabilities. If such consolidation, merger or purchase or acquisition of assets or liabilities increases the **Insured's** total assets by more than five percent (5%), the **Insurer** may condition the **Insurer's** consent by requiring payment of an additional premium; but for the first ninety (90) days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this **Crime Coverage Section** shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all **Occurrences** causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

(vi) COOPERATION

The **Insured** must cooperate with the **Insurer** in all matters pertaining to this **Crime Coverage Section** as stated in its terms and conditions.

(vii) DUTIES IN THE EVENT OF LOSS

(1) After the **Insured Discovers** a loss or a situation that may result in loss of or damage to **Money, Securities** or **Other Property** the **Insured** must:

(a) Notify the **Insurer** as soon as possible, but no later than sixty (60) days after

CRIME COVERAGE SECTION
© All rights reserved.

Discovery of a loss or a situation that may result in loss of or damages to **Money, Securities** or **Other Property.** If the **Insured** has reason to believe that any loss (except for loss covered under Insuring Agreement 1.A. or 1.B.) involves a violation of law, the **Insured** must also notify the local law enforcement authorities.

(b) Submit to examination under oath at the **Insured's** request and give the **Insurer** a signed statement of the **Insured's** answers.

(c) Produce for the **Insured's** examination all pertinent records.

(d) Give the **Insurer** a detailed, sworn proof of loss within one hundred and twenty (120) days of the discovery of a loss or a situation that may result in loss of or damages to **Money, Securities** or **Other Property**, provided, however, that such proof of loss shall not be required solely in the event the **Insured** elects to have an independent Investigative Specialist investigate the facts and determine the quantum of loss pursuant to Condition 6(a)(vii)(2) and such report is issued pursuant to the terms and conditions of that clause.

(e) Cooperate with the **Insurer** in the investigation and settlement of any claim.

(2) The Fidelity Research & Investigative Settlement Clause (FRISC)

The **Insured** may, with respect to such loss or situation that may result in loss or damage to **Money, Securities** or **Other Property**, elect to have an independent Investigative Specialist investigate the facts and determine the quantum of loss. The **Insured** and the **Insurer** shall jointly task and budget the Investigative Specialist regarding the scope and cost of the investigation to be performed. The final report issued by the Investigative Specialist will be definitive as respects the facts and the quantum of loss and shall be provided to both the **Insured** and the **Insurer.** After a joint review of the investigative report, if the **Insured** and the **Insurer** cannot agree upon the settlement of loss, then the **Insurer,** at the **Insured's** request, shall submit the dispute to arbitration, pursuant to the provisions of Clause 14. "DISPUTE RESOLUTION PROCESS" of the **General Terms and Conditions.** The **Insured** shall select an Investigative Specialist from the list of Investigative Specialists affixed as Appendix E and made part of this **Crime Coverage Section** located in the same jurisdiction in which the loss or situation that may result in loss or damage to **Money, Securities** or **Other Property** occurred. In the event such loss or situation that may result in loss or damage to **Money, Securities** or **Other Property** occurred in a jurisdiction not included on the list, the **Insured** shall select an Investigative Specialist in the listed jurisdiction which is the nearest geographic jurisdiction to the jurisdiction in which the loss or situation occurred or where the corporate headquarters of the **Insured** is located. No changes shall be made during the Policy Period to the list of Investigative Specialists attached as Appendix E unless the amendments are at the **Insured's** request.

The **Insured** shall notify the **Insurer** in writing of the above election to have an independent Investigative Specialist investigate the facts and determine the quantum of loss within thirty (30) days from the date on which the **Insured** first notifies the **Insurer** pursuant to Condition 6(a)(vii)(1). Notwithstanding subparagraph (iii) of the Exclusion entitled "Indirect Loss", all fees, costs and expenses of the investigation, including any fee charged by the Investigative Specialist, shall be paid as follows: fifty percent (50%) of such fees, costs and expenses shall be paid by the **Insured** and fifty percent (50%) shall be paid out of the applicable Per Occurrence Limit of Liability specified in Item 5 of the Declarations. No Deductible Amount shall apply to the fees, costs and expenses of the independent

CRIME COVERAGE SECTION
© All rights reserved.

investigation, including any fee charged by the Investigative Specialist.

In addition, whether or not the **Insured** elects to have an independent Investigative Specialist investigate the facts and determine the quantum of loss pursuant to the above terms and conditions, upon the Insurer's request, the **Insured** shall submit to examination by the **Insurer**, subscribe the same, under oath if required, give the **Insurer** a signed statement of the **Insured's** answers, and produce for the **Insurer's** examination all pertinent records, all at such reasonable times and places as the **Insurer** shall designate, and shall cooperate with the **Insurer** in all matters pertaining to loss or claims with respect thereto.

(viii) EMPLOYMENT BENEFIT PLAN

(1) The **Employee Benefit Plans** shown by Endorsement attached to this **Crime Coverage Section** (hereafter referred to as **Plan**) are included as **Insureds** under Insuring Agreement 1.A.

(2) If any **Plan** is **insured** jointly with any other entity under this policy, the **Insured** or the Plan Administrator must select a Per Occurrence Limit of Liability for Insuring Agreement 1.A. that is sufficient to provide a Per Occurrence Limit of Liability for each **Plan** that is at least equal to that required if each **Plan** were separately insured.

(3) With respect to loss sustained or **Discovered** by any such **Plan**, Insuring Agreement 1.A. is replaced by the following:

The **Insurer** will pay for loss of or damage to **Money, Securities** and **Other Property** resulting directly from fraudulent or dishonest acts committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

(4) If the **Named Entity** is an entity other than a **Plan**, any payment the Insurer makes for loss sustained by any **Plan** will be made to the **Plan** sustaining the loss.

(5) If two or more **Plans** are **insured** under this **Crime Coverage Section**, any payment the **Insurer** makes for loss:

(a) sustained by two or more **Plans**; or

(b) of commingled **Money, Securities** or **Other Property** of two or more **Plans**;

resulting directly from an **Occurrence** will be made to each **Plan** sustaining loss by prorating the total applicable Per Occurrence Limit of Liability of all **Plans** based upon the proportion that the amount of loss for each **Plan** bears to the total amount of loss for all **Plans** sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement 1.A. does not apply to loss sustained by any **Plan**.

(ix) EXAMINATION OF THE INSURED'S BOOKS AND RECORDS

The **Insurer** may examine and audit the **Insured's** books and records as they relate to this **Crime Coverage Section** at any time during the Policy Period and up to three (3) years afterward.

(x) EXTENDED PERIOD TO DISCOVER LOSS

The **Insurer** will pay for loss that the **Insured** sustained prior to the effective date of cancellation of this **Crime Coverage Section**, which is **Discovered** by the **Insured**:

(1) No later than sixty (60) days from the date of that cancellation. However, this extended period to **Discover** loss terminates immediately upon the effective date

CRIME COVERAGE SECTION
© All rights reserved.

of any other insurance obtained by the **insured**, whether from the **insurer** or another insurer, replacing in whole or in part the coverage afforded under this **Crime Coverage Section**, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

    (2) No later than one (1) year from the date of that cancellation with regard to any **Employee Benefit Plan.**

(xi) INSPECTION AND SURVEYS

    (1) The **Insurer** has the right to:

        (a) make inspections and surveys at any time;

        (b) give the **Insured** reports on the conditions the **Insurer** finds; and

        (c) recommend changes.

    (2) The **Insurer** is not obligated to make any inspections, surveys, reports or recommendations and any such actions the **Insurer** does undertake relate only to insurability and the premiums to be charged. The **Insurer** does not make safety inspections. The **Insurer** does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And the **Insurer** does not warrant that conditions:

        (A) are safe or healthful; or

        (B) comply with laws, regulations, codes or standards.

    (3) Conditions 6(a)(xi)(1) and 6(a)(xi)(2) above apply not only to the **Insurer**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

(xii) JOINT INSURED

    (1) If any additional **Insured** is added by Endorsement to this **Crime Coverage Section**, the **Named Entity** set forth in the Declarations will act for itself and for every other **Insured** for all purposes of this **Crime Coverage Section** (hereinafter "first **Named Entity**"). If the first **Named Entity** ceases to be covered, then the next **Named Entity** as set forth in such Endorsement will become the first **Named Entity.**

    (2) If any **Insured**, or partner, **Member** or officer of that **Insured** has knowledge of any information relevant to this **Crime Coverage Section**, that knowledge is considered knowledge of every **Insured.**

    (3) An **Employee** of any **Insured** is considered to be an **Employee** of every **Insured.**

    (4) If this **Crime Coverage Section** or any of its coverages is cancelled as to any **Insured**, loss sustained by that **Insured** is covered only if it is **Discovered** by the **Insured:**

        (a) no later than sixty (60) days from the date of that cancellation. However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by that **Insured**, whether from the **Insurer** or another insurer, replacing in whole or in part the coverage afforded under this **Crime Coverage Section**, whether or not such other insurance provides coverage for loss sustained prior to its effective date;

        (b) no later than one (1) year from the date of that cancellation with regard to any **Employee Benefit Plan.**

    (5) The **Insurer** will not pay more for loss sustained by more than one **Insured** than the amount the **Insurer** would pay if all such loss had been sustained by one

**BRANCHive Copy**
14

CRIME COVERAGE SECTION
© All rights reserved.

**Insured.**

(6) Payment by the **Insurer** to the first **Named Entity** for loss sustained by any **Insured**, other than an **Employee Benefit Plan**, shall fully release the **Insurer** on account of such loss.

(xiii) LEGAL ACTION AGAINST US

The **Insured** may not bring any legal action against the **Insurer** involving loss:

(1) unless the **Insured** has complied with all the terms of this **Crime Coverage Section** and policy;

(2) until ninety (90) days after the **Insured** has filed proof of loss with the **Insurer** or 90 days after the Investigative Specialist has submitted the report; and

(3) unless brought within two (2) years from the date the **Insured Discovered** the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

(xiv) LIBERALIZATION

If the **Insurer** adopts any revision that would broaden the coverage under this **Crime Coverage Section** without additional premium within forty- five (45) days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this **Crime Coverage Section.**

(xv) LOSS SUSTAINED DURING THE PRIOR INSURANCE ISSUED BY THE INSURER OR ANY AFFILIATE

(1) Loss Sustained Partly During This Policy And Partly During Prior Insurance

If the **Insured Discovers** loss during the Policy Period shown in the Declarations, resulting directly from an **Occurrence** taking place:

(a) partly during the Policy Period shown in the Declarations; and

(b) partly during any Policy Period of any prior cancelled insurance that the Insurer or any affiliate issued to the **Insured** or any predecessor in interest;

and this **Crime Coverage Section** became effective at the time of cancellation of the prior insurance, the **Insurer** will first settle the amount of loss that the **Insured** sustained during this Policy Period. The **Insurer** will then settle the remaining amount of loss that the **Insured** sustained during any Policy Period of the prior insurance.

(2) Loss Sustained Entirely During Prior Insurance

If the **Insured Discovers** loss during the Policy Period shown in the Declarations, resulting directly from an **Occurrence** taking place entirely during any Policy Period of any prior cancelled insurance that the **Insurer** or any affiliate issued to the **Insured** or any predecessor in interest, the **Insurer** will pay for the loss, provided:

(a) this **Crime Coverage Section** became effective at the time of cancellation of the prior insurance; and

(b) the loss would have been covered under this **Crime Coverage Section** had it been in effect at the time of the **Occurrence.**

The **Insurer** will first settle the amount of loss that the **Insured** sustained during the most recent prior insurance. The **Insurer** will then settle any remaining amount

CRIME COVERAGE SECTION
© All rights reserved.

of loss that the **Insured** sustained during any Policy Period of any other prior insurance.

(3) In settling loss subject to this Condition:

(a) The most the **Insurer** will pay for the entire loss is the highest single Per Occurrence Limit of Liability applicable during the period of loss, whether such limit was written under this **Crime Coverage Section** or was written under the prior insurance issued by the **Insurer**.

(b) The **Insurer** will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this **Crime Coverage Section**. If no loss was sustained under this **Crime Coverage Section**, the **Insurer** will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this **Crime Coverage Section**, or the most recent prior insurance, the **Insurer** will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

The **Insurer** will not apply any other Deductible Amount that may have been applicable to the loss.

Notwithstanding any of the above provisions of this Condition 6(a) (xv),no payment made for lossunder either this Policy Period or any prior Policy Period shall exceed(i) the amount of the loss sustained during the respective Policy Period; and/or (ii) thePer Occurrence Limit of Liability of the respective Policy Period.

(xvi) LOSS SUSTAINED DURING PRIOR INSURANCE NOT ISSUED BY THE INSURER OR ANY AFFILIATE

(1) If the **Insured Discovers** loss during the Policy Period shown in the Declarations, resulting directly from an **Occurrence** taking place during the Policy Period of any prior cancelled insurance that was issued to the **Insured** or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, the **Insurer** will pay for the loss under this **Crime Coverage Section**, provided:

(a) this **Crime Coverage Section** became effective at the time of cancellation of the prior insurance; and

(b) the loss would have been covered under this **Crime Coverage Section** had it been in effect at the time of the **Occurrence**.

(2) In settling loss subject to this Condition:

(a) The most the **Insurer** will pay for the entire loss is the lesser of the Limits of Liability applicable during the period of loss, whether such limit was written under this **Crime Coverage Section** or was written under the prior cancelled insurance.

(b) The **Insurer** will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3) The insurance provided under this Condition is subject to the following:

(a) If loss covered under this Condition is also partially covered under Condition 6(a)(xv), the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under Condition 6(a)(xv).

**BRANCHive Copy** 16

CRIME COVERAGE SECTION
© All rights reserved.

(b) For loss covered under this Condition that is not subject to Condition 6(a)(xvi)(3)(a) above, the amount recoverable under this Condition is part of, not in addition to, the Per Occurrence Limit of Liability applicable to the loss covered under this **Crime Coverage Section** and is limited to the lesser of the amount recoverable under:

(a) this **Crime Coverage Section** as of its effective date; or

(b) the prior cancelled insurance had it remained in effect.

(xvii) OTHER INSURANCE

If other valid and collectible insurance is available to the **Insured** for loss covered under this **Crime Coverage Section**, our obligations are limited as follows:

(1) Primary Insurance

When this policy is written as primary insurance, and:

(a) The **Insured** has other insurance subject to the same terms and conditions as this **Crime Coverage Section**, the **Insurer** will pay the **Insurer's** share of the covered loss. The **Insurer's** share is the proportion that the applicable Per Occurrence Limit of Liability shown in Item 5 of the Declarations bears to the total limit of all insurance covering the same loss.

(b) The **Insured** has other insurance covering the same loss other than that described in Condition 6(a)(xvii)(1)(A) above, the Insurer will only pay for the amount of loss that exceeds:

(i) the Limit of Liability and Deductible Amount of that other insurance, whether the **Insured** can collect on it or not; or

(ii) the Deductible Amount shown in the Declarations;

whichever is greater. The **Insurer's** payment for loss is subject to the terms and conditions of this **Crime Coverage Section**.

(2) Excess Insurance

(a) When this **Crime Coverage Section** is written excess over other insurance, the **Insurer** will only pay for the amount of loss that exceeds the Limit of Liability and Deductible Amount of that other insurance, whether the **Insured** can collect on it or not. The **Insurer's** payment for loss is subject to the terms and conditions of this **Crime Coverage Section** and policy.

(b) However, if loss covered under this **Crime Coverage Section** is subject to a Deductible, the **Insurer** will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

(xviii) OWNERSHIP OF PROPERTY; INTERESTS COVERED

The property covered under this **Crime Coverage Section** is limited to property:

(1) that the **Insured** owns or leases; or

(2) that the **Insured** holds for others whether or not the **Insured** is legally liable for the loss of such property.

However, this **Crime Coverage Section** is for the **Insured's** benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this **Crime Coverage Section** must be presented by the **Insured**.

CRIME COVERAGE SECTION
© All rights reserved.

(xix) PREMIUMS

The first **Named Entity** shown in the Declarations:

(1) is responsible for the payment of all premiums; and

(2) will be the payee for any return premiums the **Insurer** pays.

(xx) RECORDS

The **Insured** must keep records of all property covered under this **Crime Coverage Section** so the **Insurer** can verify the amount of any loss.

(xxi) RECOVERIES

(1) Any recoveries, whether effected before or after any payment under this **Crime Coverage Section**, whether made by the **Insurer** or the **Insured**, shall be applied net of the expense of such recovery:

(a) First, to the **Insured** in satisfaction of the **Insured's** covered loss in excess of the amount paid under this **Crime Coverage Section**;

(b) Second, to the **Insurer** in satisfaction of amounts paid in settlement of the **Insured's** claim;

(c) Third, to the **Insured** in satisfaction of any Deductible Amount; and

(d) Fourth, to the **Insured** in satisfaction of any loss not covered under this **Crime Coverage Section**.

(2) Recoveries do not include any recovery:

(a) from insurance, suretyship, reinsurance, security or indemnity taken for the **Insurer's** benefit; or

(b) of original **Securities** after duplicates of them have been issued.

(xxii) TERRITORY

This **Crime Coverage Section** covers loss that the **Insured** sustains resulting directly from an **Occurrence** taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

(xxiii) TRANSFER OF THE INSURED'S RIGHTS AND DUTIES UNDER THIS CRIME COVERAGE SECTION

(1) The **Insured's** rights and duties under this **Crime Coverage Section** may not be transferred without the **Insurer's** written consent except in the case of death of an individual **Named Entity**.

(2) If the **Insured** dies, the **Insured's** rights and duties will be transferred to the **Insured's** legal representative but only while acting within the scope of duties as the deceased **Insured's** legal representative. Until the **Insured's** legal representative is appointed, anyone having temporary custody of the **Insured's** property will have the **Insured's** rights and duties but only with respect to that property.

(xxiv) TRANSFER OF THE INSURED'S RIGHTS OF RECOVERY AGAINST OTHERS TO THE INSURER

The **Insured** must transfer to the **Insurer** all the **Insured's** rights of recovery against any person or organization for any loss the **Insured** sustained and for which the **Insurer** has paid or settled. The **Insured** must also do everything necessary to secure those rights and do nothing after loss to impair them.

CRIME COVERAGE SECTION
Ⓟ All rights reserved.

(xxv) VALUATION - SETTLEMENT

(1) The value of any loss for purposes of coverage under this **Crime Coverage Section** shall be determined as follows:

(a) Loss of **Money** but only up to and including its face value. The **Insurer** will, at the **Insured's** option, pay for loss of **Money** issued by any country other than the United States of America:

    (i) at face value in the **Money** issued by that country; or

    (ii) in the United States of America dollar equivalent determined by the rate of *The Wall Street Journal* exchange published in on the day the loss was **Discovered**.

(b) Loss of **Securities** but only up to and including their value at the close of business on the day the loss was **Discovered**. The **Insurer** may, at the **Insurer's** option:

    (i) pay the market value of such **Securities** or replace them in kind, in which event the **Insured** must assign to the **Insurer** all the **Insured's** rights, title and interest in and to those **Securities**; or

    (ii) pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities**. However, the **Insurer** will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

        (1) market value of the **Securities** at the close of business on the day the loss was **Discovered**; or

        (2) the Per Occurrence Limit of Liability applicable to the **Securities**.

(c) Loss of or damage to **Other Property** or loss from damage to the **Premises** or its exterior for the replacement cost of the property without deduction for depreciation. However, the **Insurer** will not pay more than the least of the following:

    (i) the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

    (ii) the amount the **Insured** actually spend that is necessary to repair or replace the lost or damaged property; or

    (iii) the Per Occurrence Limit of Insurance applicable to the lost or damaged property.

With regard to subparagraphs (i) through (iii) above, the **Insurer** will not pay on a replacement cost basis for any loss or damage:

    (i) until the lost or damaged property is actually repaired or replaced; and

    (ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, the **Insurer** will pay on an actual cash value basis.

(2) The **Insurer** will, at the **Insured's** option, settle loss or damage to property other than **Money**:

(a) in the **Money** of the country in which the loss or damage occurred; or

CRIME COVERAGE SECTION
Ⓒ All rights reserved.

(b) in the United States of America dollar equivalent of the **Money** of the country in which the loss or damage occurred determined by the rate of exchange *The Wall Street Journal* published in on the day the loss was **Discovered.**

(3) Any property that the **Insurer** pays for or replaces becomes the **Insurer's** property.

(b) CONDITIONS APPLICABLE TO INSURING AGREEMENT 1.A., "EMPLOYEE THEFT," OF THIS CRIME COVERAGE SECTION:

(i) TERMINATION AS TO ANY EMPLOYEE

Insuring Agreement 1.A. terminates as to any **Employee**:

(1) As soon as:

(a) the **Insured**; or

(b) any of the **Insured's** partners, **Members, Managers,** officers, directors, or trustees not in collusion with the **Employee**;

learn of **Theft** or any other dishonest act committed by the **Employee** whether before or after becoming employed by the **Insured**; or

(2) On the date specified in a notice mailed to the first **Named Entity**. That date will be at least sixty (60) days after the date of mailing.

The **Insurer** will mail or deliver the **Insurer's** notice to the first **Named Entity's** last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

(ii) TERRITORY

The **Insurer** will pay for loss caused by any **Employee** while temporarily outside the territory specified in Condition 6(a)(xxii) for a period of not more than ninety (90) consecutive days.

(c) CONDITIONS APPLICABLE TO INSURING AGREEMENT 1.B., "FORGERY OR ALTERATION," OF THIS CRIME COVERAGE SECTION:

(i) DEDUCTIBLE AMOUNT

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement 1.B.

(ii) MECHANICAL SIGNATURES

The **Insurer** will treat signatures that are produced or reproduced mechanically the same as handwritten signatures.

(iii) PROOF OF LOSS

The **Insured** must include with the **Insured's** proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

(iv) TERRITORY

The **Insurer** will cover loss that the **Insured** sustains resulting directly from an **Occurrence** taking place anywhere in the world. Condition 6(a)(xxii) does not apply to Insuring Agreement 1.B.

(d) CONDITIONS APPLICABLE TO INSURING AGREEMENTS 1.D., "INSIDE THE PREMISES - ROBBERY OR SAFE BURGLARY OF OTHER PROPERTY," and 1.E., "OUTSIDE THE PREMISES" OF THIS CRIME COVERAGE SECTION:

95730 (9/07)   **BRANCHive Copy**            20

CRIME COVERAGE SECTION
Ⓒ All rights reserved.

(i) ARMORED MOTOR VEHICLE COMPANIES

Under Insuring Agreement 1.E. of this **Crime Coverage Section**, the **Insurer** will only pay for the amount of loss the **Insured** cannot recover:

(1) under the **Insured's** contract with the armored motor vehicle company; and

(2) from any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

(ii) SPECIAL LIMIT OF LIABILITY FOR SPECIFIED PROPERTY

The **Insurer** will only pay up to $5,000 for any one **Occurrence** of loss of or damage to:

(1) precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

(e) CONDITIONS APPLICABLE TO INSURING AGREEMENT 1.F., "COMPUTER FRAUD," OF THIS CRIME COVERAGE SECTION

(i) SPECIAL LIMIT OF INSURANCE FOR SPECIFIED PROPERTY

The **Insurer** will only pay up to $5,000 for any one **Occurrence** of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

(ii) TERRITORY

The **Insurer** will cover loss that the **Insured** sustains resulting directly from an **Occurrence** taking place anywhere in the world. Condition 6(a)(xxii) does not apply to Insuring Agreement 1.F.

In witness whereof, the **Insurer** has caused this **Crime Coverage Section** to be executed on the Declarations.


[The balance of this page is intentionally left blank.]

CRIME COVERAGE SECTION
© All rights reserved.

**APPENDIX E**
**LIST OF INVESTIGATIVE SPECIALISTS/MEDIATORS AND ARBITRATORS**
**FOR F.R.I.S.C.**
**(CRIME COVERAGE SECTION ONLY)**

| Names | Address | Telephone No. | Profession |
|---|---|---|---|
| **INVESTIGATIVE SPECIALISTS** | | | |
| | | | |
| **U.S.A.** | | | |
| | | | |
| Aksman & Aksman CPA | 509 Stillwells Corner Road Freehold, NJ 07728 Attention: Kenneth Aksman | (732) 462- 8080 | Accountants |
| Charles R. Barstow, CPA | 15 Timothy Avenue San Anselmo, CA 94960 Attention: Chuck Barstow | (415) 455- 0767 | Accountants |
| Harner Evans PLC | 7709 North 11th Avenue Phoenix, AZ 85021 Attention: Lamar Harner | (602) 395- 1256 | Accountants |
| Kalchik, Pratt & Associates, LLC | 19710 Governors Highway Suite 12 Flossmoor, IL 60422 Attention: Donald R. Pratt,Jr. | (708) 647- 0863 | Investigators |
| Kinsel Accountancy CPA's | 503 North Central Avenue Glendale, CA 91203 Attention: Stacy A. Kinsel | (818) 240- 3300 | Accountants |
| Moody's Inc. | 7021 West 153rd Street Orlando Park, IL 69462 Attention: Bob Moody | (708) 535- 1010 | Accountants |
| RGL Forensic Accountants | 300 Montgomery Street San Francisco, CA 94104 Attention: Steven Rosenthal | (800) 669- 8323 | Accountants |
| Studler, Doyle & Co., LLC | 1444 Farnsworth Avenue Suite 500 Aurora, IL 60505 Attention: D.M. Studler | (630) 820- 5770 | Accountants |
| | | | |

© All rights reserved.

| CANADA | | | |
|---|---|---|---|
| | | | |
| **Alberta:** | | | |
| Cunningham Lindsey | 807 Manning Road N.E. Suite 100 Calgary, Alberta T2E- 7m8 Attention: Scott Stiles | (403) 269- 2069 | General Adjusters |
| | | | |
| **British Columbia:** | | | |
| Baker, Bertrand, Chasse & Goguen Claim Services | Madison Centre, 1901 Rosser Ave., Suite 410 Burnaby, BC V5C- 6R6 Attention: James O'Connor | (604) 742- 9929 | Fidelity Adjusters |
| | | | |
| Schumka Craig & Moore | 600- 1111 Melville Street Vancouver, BC V6E- 3V6 Attention: Michael Parsons | (604) 681- 6331 | General Adjusters |
| | | | |
| James P. Blatchford Consulting | 1311 Howe Street Suite 200 Vancouver, BC V6Z 2P3 Attention: James Blatchford | (604) 691- 1777 | Accountants |
| | | | |
| **Manitoba:** | | | |
| Cunningham Lindsey | 631- B Marion Street Winnipeg, Manitoba R2J- 0J9 Attention: Denis Rivard | (204) 985- 1777 (Ext. 772) | General Adjusters |
| | | | |
| **Maritimes:** | | | |
| Cunningham Lindsey | Park Place Corporate Campus 238 A Brownlow Avenue, Suite 210 Dartmouth, Nova Scotia B3B- 2B4 Attention: Nick MacDonald | (902) 421- 1519 | General Adjusters |
| **Ontario:** | | | |
| | | | |
| | | | |
| Baker, Bertrand, Chasse & Goguen Claim Services | 3660 Hurontario Street 6th Floor Mississauga, ON L5B- 3C4 Attention: Ted Baker | (905) 279- 8880 Ext. 224 | Fidelity Adjusters |

✆ All rights reserved.

**BRANCHive Copy**
          Page 2 of 6

| LBC Int'l Investigative Accounting | 40 University Avenue<br>Suite 1003<br>Toronto, ON M5J- 1T1<br>Attention: Phil Turner | (416) 596- 1000 | Accountants |
|---|---|---|---|
|  |  |  |  |
| **Quebec:** |  |  |  |
| Baker, Bertrand, Chasse & Goguen Claim Services | 1200 Boulevard Chomedey<br>Bureau 700<br>Laval, Quebec H7V- 3Z3<br>Attention: Michel Prud'homme | (450) 688- 3113<br>Ext. 225 | Fidelity Adjusters |
|  |  |  |  |
| LBC Int'l Investigative Accounting | 1440 St. Catherine Street<br>West, Suite 710<br>Montreal, Quebec H3G- 1R8<br>Attention: Emil Basilla | (514) 866- 5431 | Accountants |
|  |  |  |  |
| **CENTRAL AND SOUTH AMERICA** |  |  |  |
|  |  |  |  |
| Carranza, Cowheard & Associates | 3625 N.W. 82nd Avenue<br>Building 2, Suite 306<br>Miami, FL. 33166<br>Attention: Luis O. Carranza | (305) 463- 7978 | Accountants |
|  |  |  |  |
| Grant Thornton | 1101 Walnut Street<br>Kansas City, MO 64106<br>Attention: Larry Redler | (816) 412- 2426 | Accountants |
|  |  |  |  |
| **U.K. & EUROPE** |  |  |  |
|  |  |  |  |
| Adjusting Services | 11 Baden Place, Crosby Row<br>London, UK SE1 1YW<br>Attention: David Ledger | 44 (20) 7357- 7631 | Adjusters & Accountants |
|  |  |  |  |
| LBC Int'l Investigative Accounting | Lloyds Avenue House<br>6 Lloyds Avenue<br>London, UK EC3N 3AX<br>Attention Oliver Tiemann | 44 (20) 7680- 1131 | Accountants |
|  |  |  |  |
| Crawford & Company THG | Trinity Court<br>42 Trinity Square<br>London, UK EC3N 4TH<br>Attention: Suzanne Kearney, Esq. | 44 (20) 7625- 4000 | Investigators |
|  |  |  |  |

© All rights reserved.

| RGL Forensic Accountants and Consultants | 17 Devonshire Square London, UK EC2M 4SQ Attention: Anthony Levitt | 44 (20) 7247-4804 | Accountants |
|---|---|---|---|
| | | | |
| Grant Thornton | 1101 Walnut Street Kansas City, MO 64106 Attention: Larry Redler | (816) 412-2426 | Accountants |
| | | | |
| **MEDIATORS & ARBITRATORS** | | | |
| | | | |
| **U.S.A.** | | | |
| | | | |
| Anderson, McPharlin & Connors | 444 South Flower Street 31st Floor Los Angeles, CA 90071 Attention: David DiBiasi | (213) 236-1618 | Attorney |
| | | | |
| Beirne, Maynard & Parsons LLP | 1300 Post Oak Boulevard Suite 2500 Houston TX 77056-3000 Attention: Jeff Parsons | (713) 623-0887 | Attorney |
| | | | |
| Boult, Cummings, Connor & Berry | 414 Union Street, Suite 1600 Nashville, TN 37219 Attention: Rick Humbracht | (615) 525-2371 | Attorney |
| | | | |
| Clausen Miller P.C. | 10 South LaSalle Street Chicago, IL 60603-1098 Attention: Gil Schroeder | (312) 855-1010 | Attorney |
| | | | |
| Carlton Fields | 4000 International Place 100 S.E. Second Street Miami, FL 33131-9101 Attention: Patricia H. Thompson | (305) 539-7239 | Attorney |
| | | | |
| D'Amato & Lynch | 70 Pine Street New York, NY 10270-0110 Attention: Ken Sagat | (212) 269-0927 | Attorney |
| | | | |
| John J. Petro, Esq. | 338 South High Street Columbus, OH 43125 Attention: John J. Petro | (614) 224-0531 | Attorney |

© All rights reserved.

| Ropers Majewski | 515 South Flower Street<br>Los Angeles, CA 90071<br>Attention: Earnest Price | (213) 312-2024 | Attorney |
|---|---|---|---|
| | | | |
| Stradley, Ronan, Stevens & Young LLP | 2600 One Commerce Square<br>Philadelphia, PA 19103<br>Attention: Samuel J. Arena, Jr. | (215) 564-8093 | Attorney |
| | | | |
| Strassburger & Price | 901 Main Street<br>Dallas, TX 75202<br>Attention: Duncan Clore | (214) 651-4300 | Attorney |
| | | | |
| **CANADA** | | | |
| | | | |
| **Alberta:** | | | |
| Field LLP | 1900 First Canadian Center<br>350 7th Avenue, SW<br>Calgary, Alberta T2P 3N9<br>Attention: Ms. Jean VanderLee | (403) 260 8520 | Attorney |
| | | | |
| **British Columbia:** | | | |
| Borden Ladner Gervais LLP | 1200 Waterfront Centre<br>200 Burrand Street<br>PO Box 49600<br>Vancouver, BC V7X 1T2<br>Attention: Ross McGowan | (604) 640-4173 | Attorney |
| | | | |
| **Ontario:** | | | |
| Bennett Jones LLP | 3400 One First Canadian Place<br>PO Box 130<br>Toronto, Ontario M5X 1A4<br>Attention: Jim Patterson | (416) 777-6250 | Attorney |
| | | | |
| Borden Ladner Gervais LLP | Scotia Plaza 40 King Street West<br>Toronto, Ontario M5H 3Y4<br>Attention: Reid Lester | (416) 367-6121 | Attorney |
| | | | |
| Affleck Greene ORR | One First Canadian Place<br>100 King Street West,<br>Suite 840<br>Toronto, Ontario M5X 1E5<br>Attention: Peter Greene | (416) 360-2800 | Attorney |

© All rights reserved.

| Quebec | | | |
|---|---|---|---|
| Borden Ladner Gervais LLP | 1000 de La Gauchetiere Street West<br>Suite 900<br>Montreal, Quebec H3B 5H4<br>Attention: John Murphy | (514) 954-3155 | Attorney |
| | | | |
| Nicholl Paskell-Mede | 630 Boulevard Rene-Levesque Ouest<br>Bureau 1700<br>Montreal, Quebec H3B 1S6<br>Attention: John Nicholl | (514) 843-3777 | Attorney |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    ◊ All rights reserved.

*BRANCH*      ***Archive Copy***

**APPENDIX B**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4- 97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    ⊕ All rights reserved.

*Archive Copy*
***BRANCH***

**POLICYHOLDER NOTICE
REGARDING
E- DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)  "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b)  "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)  "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d)  "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1.  assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2.  assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3.  serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4.  such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

The list of approved E- Consultant Firms is accessible through our online directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online E- Consultant Firm Directory, please go to the website and click on the "e- Consultant Panel Members" link.

References in this policy to the list of E- Consultant Firms or related appendices are deemed amended to refer to the applicable online E- Consultant Firm Directory at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

97886 (4/08)        *Archive Copy*              1

APPENDIX D
CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION

I.  **DEFINITIONS**

(a)  "**Crisis Management Event**" means one of the following events which, in the good faith opinion of the **Company**, did cause or is reasonably likely to cause a **Material Effect**:

1.  Management Crisis:
    The death, incapacity or criminal indictment of any **Executive** of the **Company**, or any **Employee** on whom the **Company** maintains key person life insurance.

2.  Employee Layoffs:
    The public announcement of layoffs of **Employees** of the Company.

3.  Debt Default:
    The public announcement that the **Company** had defaulted or intends to default on its debt.

4.  Bankruptcy:
    The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5.  Mass Tort:
    The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

6.  Regulatory Crisis:
    The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis Management Event** shall first commence when the **Company** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b)  "**Crisis Management Firm**" means any firm listed in the Insurer's online directory, at http://www.aig.com/us/panelcounseldirectory, as a pre-approved Crisis Management Firm. To access the applicable online Crisis Management Firm Directory, please go to the website and click on the "CrisisFund® " link.

(c)  "**Crisis Management Loss**" means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a

Claim is made, regardless of whether the amount is incurred prior to or subsequent to the making of the Claim:

    (1)    amounts for which the Company is legally liable for the reasonable and necessary fees and expenses incurred by a Crisis Management Firm in the performance of Crisis Management Services for the Company arising from a Crisis Management Event; and

    (2)    amounts for which the Company is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by Executives, Employees or agents of the Company or the Crisis Management Firm, in connection with the Crisis Management Event.

(d)    "Crisis Management Services" means those services performed by a Crisis Management Firm in advising the Company or any of its Executives or Employees on minimizing potential harm to the Company arising from the Crisis Management Event, including but not limited to maintaining and restoring public confidence in the Company.

(e)    "Material Effect" means the publication of unfavorable information regarding the Company which can reasonably be considered to lessen public confidence in the competence of the Company. Such publication must in occur in either:

    (1)    a daily newspaper of general circulation in the geographic area of the Company, or

    (2)    a radio or television news report on an Company received in the geographic area of the Company.

## II.    EXCLUSIONS

The term Crisis Management Event shall not include any event relating to:

1.    any pending or prior litigation as of the Continuity Date for the D&O Coverage Section indicated in Item 3 of the Declarations;

2.    any Claim which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3.    the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants; or

4.    the hazardous properties of nuclear materials.

ENDORSEMENT# *1*

This endorsement, effective *12:01 am*     *October 22, 2013*       forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CALIFORNIA AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added any supersedes any provision to the contrary:

CANCELLATION

The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

(1)   Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

(2)   A judgment by a court or an administrative tribunal that the named Insured has violated any law of this state of or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

(3)   Discovery of fraud or material misrepresentation by either of the following:

a)   The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

b)   The named Insured or his or her representative in pursuing a claim under the policy.

(4)   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

(5)   Failure by the named Insured or Other Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

(6)   A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

© All rights reserved.
**END 001**

ENDORSEMENT# *1*    (continued)

(7)    A determination by the commissioner that a continuation of the policy coverage could place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

(8)    A change by the named Insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named Insured at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

CONDITIONAL RENEWAL AND NONRENEWAL

If the Insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the Insurer shall mail or deliver to the producer of record and the named Insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1)    If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the insurance group.

(2)    If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3)    If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)    If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

(5)    If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)    If the Insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the Insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the Insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 001*

52133 (3/07)    **BRANCH** *Archive Copy*    Page 2 of 2

ENDORSEMENT# *2*

This endorsement, effective *12:01 am*     *October 22, 2013*     forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DEFINITION OF LOSS AMENDED ENDORSEMENT**
**(Punitive Damages - D&O and EPL Coverage Sections)**
**(State of California)**

In consideration of the premium charged, it is hereby understood and agreed that both Paragraph (u) of Clause **2. DEFINITIONS** of the D&O Coverage Section, and Paragraph (m) of Clause **2. DEFINITIONS** of the EPL Coverage Section are amended to include the following at the end thereof:

Any coverage that may be provided under this policy for punitive, exemplary or multiple damages will be subject to any applicable limitation of such coverage provided under any applicable provision of the laws of the State of California.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 002*

105721 (8/10)  *BRANCH*
*Archive Copy*     Page 1 of 1

ENDORSEMENT# *3*

This endorsement, effective at *12:01 am   October 22, 2013*        forms a part of
Policy No. *01-541-71-46*
Issued to: *OC Listing, Inc*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay
any claim or provide any benefit hereunder to the extent that the provision of such cover,
payment of such claim or provision of such benefit would expose the Insurer, its parent
company or its ultimate controlling entity to any sanction, prohibition or restriction under
United Nations resolutions or the trade or economic sanctions, laws or regulations of the
European Union or the United States of America.

AUTHORIZED REPRESENTATIVE

◎ All rights reserved.

*END 003*

Page 1 of 1

89644 (6/13)         *BRANCH*
*Archive Copy*

ENDORSEMENT# *4*

This endorsement, effective *12:01 am*      *October 22, 2013*      forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FLSA AND RELATED EXCLUSIONS AMENDED
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that
notwithstanding any other provision of this policy (including any endorsement attached
hereto whether such endorsement precedes or follows this endorsement in time or
sequence), the policy is amended as follows:

1.   Clause 4. EXCLUSIONS of the **D&O Coverage Section** (if purchased) is amended by
     deleting Exclusion (o) in its entirety.

2.   Clause 3. EXCLUSIONS of the **EPL Coverage Section** (if purchased) is amended by
     deleting Exclusions (g) and (h) in their entirety.

3.   In Clause 4. EXCLUSIONS of the **D&O Coverage Section** (if purchased) and Clause 3.
     EXCLUSIONS of the **EPL Coverage Section** (if purchased), the following exclusion is
     added at the end thereof:

     (FL- 1)  for violation(s) of any of the responsibilities, obligations or duties imposed by
              the Employee Retirement Income Security Act of 1974, the Fair Labor
              Standards Act (except the Equal Pay Act), the National Labor Relations Act,
              the Worker Adjustment and Retraining Notification Act, the Consolidated
              Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act,
              any rules or regulations of the foregoing promulgated thereunder, and
              amendments thereto or any similar federal, state, local or foreign statutory
              law or common law.

              It is acknowledged that **Claims** for violation(s) of any of the responsibilities,
              obligations or duties imposed by "similar federal, state, local or foreign
              statutory law or common law," as such quoted language is used in the
              immediately- preceding paragraph, include, without limitation, any and all
              **Claims** which in whole or in part allege, arise out of, are based upon, are
              attributable to, or are in any way related to any of the circumstances
              described in any of the following:

              (1)   the refusal, failure or inability of any **Insured(s)** to pay wages or
                    overtime pay (or amounts representing such wages or overtime
                    pay) for services rendered or time spent in connection with work
                    related activities (as opposed to tort- based back pay or front pay
                    damages for torts other than conversion);

              (2)   improper deductions from pay taken by any **Insured(s)** from any
                    **Employee(s)** or purported **Employee(s)**; or

              (3)   failure to provide or enforce legally required meal or rest break
                    periods;

◊ All rights reserved.
*END 004*

97629 (3/08)  *BRANCHive Copy*         Page 1 of 2

<u>ENDORSEMENT#</u> *4*    (continued)

Notwithstanding the foregoing, with respect to the **EPL Coverage Section**, this exclusion (FL-1) shall not apply to the extent that a **Claim** is for **Retaliation**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 004*

97629 (3/08) *BRANCArchive Copy*        Page 2 of 2

ENDORSEMENT# *5*

This endorsement, effective *12:01 am*   *October 22, 2013*   forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

    c-claim@AIG.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 005*

99758 (8/08)   **BRANCHive Copy**   Page 1 of 1

ENDORSEMENT# *6*

This endorsement, effective *12:01 am*   *October 22, 2013*   forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Company**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Company**; or

   (3)   the furnishing by an **Insured** or the **Company** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Company** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.    (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear Facility**" means:

   (a)   any nuclear reactor;

   (b)   any equipment or device designed or used for

© All rights reserved.

*END 006*

95737 (9/07)   **BRANGHive Copy**         Page 1 of 2

ENDORSEMENT# *6*    (continued)

(1)  separating the isotopes of uranium or plutonium,
(2)  processing or utilizing spent fuel, or
(3)  handling, processing or packaging wastes;

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear Material" means source material, special nuclear material or byproduct material.

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Source Material," "Special Nuclear Material," and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"Waste" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 006*

ENDORSEMENT# *7*

This endorsement, effective *12:01 am        October 22, 2013*        forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION AMENDED
### (MEDIATION)
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the
policy is amended as follows:

1.  In Clause 2, **"DEFINITIONS,"** of the **D&O Coverage Section**, subparagraph
    2(b)(ii) of the Definition of **"Claim"** is deleted in its entirety and replaced with
    the following:

    (b)    **"Claim"** means:

        (ii)    a civil, criminal, administrative, regulatory, arbitration or mediation
                proceeding for monetary, non-monetary or injunctive relief which
                is commenced by:

            (1)    service of a complaint or similar pleading; or

            (2)    return of an indictment, information or similar document (in
                    the case of a criminal proceeding); or

            (3)    receipt or filing of a notice of charges; or

2.  In Clause 2, **"DEFINITIONS,"** of the **EPL Coverage Section**, subparagraph 2(a)(ii)
    of the definition of "Claim" is deleted in its entirety and replaced with the
    following:

    (a)    **"Claim"** means:

        (ii)    a civil, criminal, administrative, regulatory, arbitration or mediation
                proceeding for monetary, non-monetary or injunctive relief which
                is commenced by:

            (1)    service of a complaint or similar pleading;

            (2)    return of an indictment, information or similar document (in
                    the case of a criminal proceeding); or

            (3)    receipt or filing of a notice of charges; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 007*

105469 (4/10)    *BRANCHive Copy*        Page 1 of 1

**ENDORSEMENT# 8**

This endorsement, effective *12:01 am*    *October 22, 2013*    forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLAIM DEFINITION AMENDED
(INJUNCTIVE RELIEF)
(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.   In Clause 2, **"DEFINITIONS,"** of the **D&O Coverage Section**, subparagraphs 2(b)(i) and
     2(b)(ii) of the Definition of "Claim" are deleted in their entirety and replaced with the
     following:

     (b)   **"Claim"** means:

           (i)    a written demand for monetary, non-monetary or injunctive relief
                  (including any request to toll or waive any statute of limitations);

           (ii)   a civil, criminal, administrative, regulatory or arbitration proceeding for
                  monetary, non-monetary or injunctive relief which is commenced by:

                  (1)   service of a complaint or similar pleading; or

                  (2)   return of an indictment, information or similar document (in the case
                        of a criminal proceeding); or

                  (3)   receipt or filing of a notice of charges; or

2.   In Clause 2, **"DEFINITIONS,"** of the **EPL Coverage Section**, subparagraphs 2(a)(i) and
     2(a)(ii) of the definition of "Claim" are deleted in their entirety and replaced with the
     following:

     (a)   **"Claim"** means:

           (i)    a written demand for monetary, non-monetary or injunctive relief
                  (including any request to toll or waive any statute of limitations);

           (ii)   a civil, criminal, administrative, regulatory or arbitration proceeding for
                  monetary, non-monetary or injunctive relief which is commenced by:

                  (1)   service of a complaint or similar pleading;

                  (2)   return of an indictment, information or similar document (in the case
                        of a criminal proceeding); or

                  (3)   receipt or filing of a notice of charges; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◈ All rights reserved.
*END 008*

105468 (4/10)   **BRANCHive Copy**    Page 1 of 1

ENDORSEMENT# *9*

This endorsement, effective *12:01 am*    *October 22, 2013*    forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED
### (SARBANES- OXLEY WHISTLEBLOWER; CREDITORS' COMMITTEE)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the **D&O Coverage Section**, paragraph (i) is deleted in its entirety and replaced as follows:

(i)    which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

(i)    any **Claim** brought by an **Individual Insured** in the form of a cross- claim or third- party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

(ii)    in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator or creditors' committee (or any assignee thereof) of such **Company**;

(iii)    any **Claim** brought by any past **Executive** of a **Company** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for a **Company** for at least four (4) years prior to such **Claim** being first made against any person;

(iv)    any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

(v)    any **Executive** engaging in any protected "whistleblower" activity specified in 18 U.S.C. 1514A(a) or any other similar "whistleblower" protection provided under any state, local or foreign securities laws; provided, however, that this subsection (v) shall not apply where the actions of any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than de minimus assistance) in the filing or prosecution of any proceeding against an **Insured** relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a

◈ All rights reserved.
*END 009*

**ENDORSEMENT#** *9*     (continued)

proceeding that is brought by the Securities and Exchange Commission,
any similar state, local or foreign regulatory body that regulates
securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 009*

102330 (8/09)   *BRANCHive Copy*      Page 2 of 2

## ENDORSEMENT# *10*

This endorsement, effective *12:01 am    October 22, 2013*    forms a part of
policy number  *01-541-71-46*
issued to *OC Listing, Inc*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SIDE A EXCESS LIMIT OF LIABILITY ENDORSEMENT
### (EXCESS LIMIT APPLICABLE TO NON-INDEMNIFIABLE LOSS
### UNDER THE D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to coverage for **Loss** provided under the **D&O Coverage Section**, the policy is hereby amended as follows:

1.  Item 7. of the Declarations is amended to include the following at the end thereof:

    (g)  **SIDE A EXCESS LIMIT OF LIABILITY:** *$500,000*    , excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a **Company** (including **Defense Costs**) under the **D&O Coverage Section** (herein the "**Side A Excess Limit of Liability**").

2.  Clause 4. **LIMITS OF LIABILITY (FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)** of the General Terms And Conditions is deleted in its entirety and replaced with the following:

    4.  **LIMITS OF LIABILITY (FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)**

    The **Policy Aggregate Limit of Liability** is the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**) under all **Coverage Sections** combined arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); provided, however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**.

    If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**) arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**. Each **Separate Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** as therein stated.

    If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**) arising out of all **Claims** first made

© All rights reserved.
*END 010*

ENDORSEMENT# *10*   (continued)

against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Shared Limit of Liability** for the **Policy Period**. Each **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

The **Side A Excess Limit of Liability** stated in Item 7(g) of the Declarations, as set forth by paragraph 1. of this endorsement above, is the aggregate limit of the **Insurer's** liability under the **D&O Coverage Section** excess of: (i) any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to the **D&O Coverage Section**; and (ii) any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to the **D&O Coverage Section**, for all **Non-Indemnifiable Loss** under the **D&O Coverage Section** arising out of all **Claims** first made against an **Executive** of a **Company** during the **Policy Period** or the **Discovery Period** (if applicable). The **Side A Excess Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Side A Excess Limit of Liability** for the **Policy Period**. The **Side A Excess Limit of Liability** shall be in addition to the **Policy Aggregate Limit of Liability** and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to the **D&O Coverage Section**.

It is agreed that the **Insurer's** liability to pay **Non-Indemnifiable Loss** shall only attach to the **Side A Excess Limit of Liability** after:

(a)  the full amount of any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to the **D&O Coverage Section** has been exhausted due to **Loss** paid thereunder; and

(b)  any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to the **D&O Coverage Section** has been exhausted by reason of loss(es) paid thereunder.

The **Side A Excess Limit of Liability** provided by this endorsement shall "drop down" (continue in force as primary insurance) only in the event of (a) and (b) above and shall not drop down for any other reason.

Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 6(b) or 6(c) of these **General Terms and Conditions** is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** and subject to any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Side A Excess Limit of Liability**.

**Defense Costs** are not payable by the **Insurer** in addition to the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Side A Excess Limit of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Policy Aggregate Limit of Liability** for **Loss** and any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Side A Excess Limit of Liability**. Amounts incurred for **Defense**

© All rights reserved.
*END 010*

ENDORSEMENT# *10*    (continued)

     **Costs** shall be applied against the Retention.

3.    Solely for purposes of the coverage as afforded by this endorsement, **"Non-Indemnifiable Loss"** means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Executive** of a **Company** pursuant to law or contract or the charter, bylaws, operating agreement or similar document of a **Company**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 010*

99563 (7/08)    *BRANCHive Copy*    Page 3 of 3

ENDORSEMENT# *11*

This endorsement, effective *12:01 am*   *October 22, 2013*   forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXTRADITION COVERAGE**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is understood and agreed that, solely with
respect to such coverage as is provided by the **D&O Coverage Section**, and solely where
permitted by law, the **D&O Coverage Section** is amended as follows:

1.   Clause 2. **DEFINITIONS**, paragraph (b)("**Claim**") is amended by appending the
     following to the end thereof:

     "**Claim**" also means any:

     (a)   official request for **Extradition** of any **Individual Insured**; or

     (b)   the execution of a warrant for the arrest of an **Individual Insured** where such
           execution is an element of **Extradition**.

2.   Clause 2. **DEFINITIONS**, paragraph (k)("**Defense Costs**") is amended by appending
     the following to the end thereof:

     "**Defense Costs**" also means reasonable and necessary fees, costs and expenses
     incurred through legal counsel and consented to by the **Insurer** resulting from an
     **Individual Insured** lawfully:

     (a)   opposing, challenging, resisting or defending against any request for or any
           effort to obtain the **Extradition** of that **Individual Insured**; or

     (b)   appealing any order or other grant of **Extradition** of that **Individual Insured**.

3.   Clause 2. **DEFINITIONS** is amended by appending the following to the end thereof:

     "**Extradition**" means any formal process by which an **Individual Insured** located in
     any country is surrendered to any other country for trial or otherwise to answer any
     criminal accusation.

4.   Clause 9. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS** does
     not apply to **Defense Costs** solely relating to **Extradition** even if the underlying
     **Wrongful Acts** relate to a **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 011*

**ENDORSEMENT#** *12*

This endorsement, effective *12:01 am*    *October 22, 2013*    forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION
(D&O, EPL AND FLI COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, solely
with respect to **Loss** as may have otherwise been covered under the **D&O Coverage
Section**, the **EPL Coverage Section** or the **FLI Coverage Section**, the **Insurer** shall not be
liable to make any payment for any **Loss** in connection with: (i) any **Claim(s)**, notices,
events, investigations or actions referred to in any of items listed below (hereinafter
"**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense
of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful
Act**, underlying facts, circumstances, acts or omissions in any way relating to any
**Event(s)**:

**Events:**

1. *Relevant Ads v. Michael Rosenthal, Russell Wallace and Michael Orefice*


2. *Notaro v. 29 Prime et al*




It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in
connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any
way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as
that term is defined below), regardless of whether or not such **Claim** involved the same
or different Insureds, the same or different legal causes of action or the same or different
claimants or is brought in the same or different venue or resolved in the same or
different forum.

◊ All rights reserved.
*END 012*

<u>ENDORSEMENT#</u> *12*   (continued)

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is a **Related Wrongful Act** to any **Wrongful Act** alleged in any **Event(s)**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 012*

99193 (5/08)  *BRANCHArchive Copy*          Page 2 of 2

<u>ENDORSEMENT#</u> *13*

This endorsement, effective *12:01 am*     *October 22, 2013*      forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SPECIFIC ENTITY EXCLUSION
## (CLAIMS BROUGHT BY OR AGAINST)
## (ALL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, with
respect to all **Coverage Sections**, the **Insurer** shall not be liable to make any payment for
any **Loss** in connection with any **Claim(s)** brought by or on behalf of or against (i) the
entity(ies) listed below; or (ii) any director, officer, partner, management committee
member, member of the Board of Managers or security holder of an entity listed below:

1. *Relavent Ads, Inc including any subsidiary or affiliate thereof*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Yeller*

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

99187 (5/08) *BRANArchive Copy*        Page 1 of 1

ENDORSEMENT# *14*

This endorsement, effective *12:01 am    October 22, 2013*      forms a part of
policy number  *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUDE CLAIMS BROUGHT BY OR ON BEHALF OF SPECIFIC INDIVIDUAL(S)
### ENDORSEMENT
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may otherwise be covered under the **D&O** and **EPL Coverage Sections**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim(s)** brought by or on behalf of the individual(s) listed below, and/or any entity on which such individual(s) is a director, officer, management committee member or trustee (or equivalent position), or any entity in which such individual(s) owns, or controls, 5% or more of an equity or debt ownership interest (individually or collectively) either directly or indirectly and/or any past, present or future director or officer (or equivalent position) of such entity.

### INDIVIDUAL(S)

*Mohammad Eldessouky*
*patner who recently resigned (TBD*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 014*

95756 (9/07)    *BRANCHive Copy*        Page 1 of 1

ENDORSEMENT# *15*

This endorsement, effective *12:01 am*     *October 22, 2013*        forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADDITIONAL INSUREDS - LISTED AFFILIATES
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely
with respect to coverage as is provided under the **Coverage Sections** specified in the
schedule below, Clause 2. Definition of **"Company"** of the **General Terms and Conditions**,
is amended to include the following entity(ies), each of which is an **"Affiliate"** (as defined
below), subject to each such **Affiliate's Continuity Date:**

**APPLICABLE COVERAGE SECTIONS:**
*D&O*
*EPL*
*FLI*

| AFFILIATE | CONTINUITY DATE |
|---|---|
| *29 Prime, Inc* | |

It is further understood and agreed that, for the purpose of the applicability of the
coverage provided by this endorsement, the **Affiliates** listed above and the **Company** will
be conclusively deemed to have indemnified the **Individual Insureds** and other persons
afforded coverage by this endorsement to the extent that such **Affiliates** or the **Company**
is permitted or required to indemnify such persons pursuant to law, common or statutory,
or contract, or the charter or by-laws of the **Company**. The **Affiliates** and the **Company**
hereby agree to indemnify such persons to the fullest extent permitted by law, including
the making in good faith of any required application for court approval.

© All rights reserved.
### END 015

ENDORSEMENT# *15*   (continued)

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Affiliates** listed above or any **Claims** made against any **Individual Insured** of such **Affiliate** listed above:

(1)   alleging, arising out of, based upon or attributable to, as of such **Affiliate's** respective **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

(2)   alleging any **Wrongful Act** occurring prior to such **Affiliate's** respective **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to any **Claim** made against any **Affiliate** listed above or any **Individual Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the respective time such **Affiliate** became an **Affiliate** and prior to the time that such **Affiliate** ceased to be an **Affiliate**.

As used in this endorsement, the term **"Affiliate"** means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 015*

101279 (3/09)   ***BRANCH*** *Archive Copy*      Page 2 of 2

ENDORSEMENT# *16*

This endorsement, effective *12:01 am*    *October 22, 2013*    forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ADDITIONAL INSURED ENDORSEMENT
## (CRIME COVERAGE SECTION ONLY)

In consideration of the premium charged, it is hereby understood and agreed that this
endorsement modifies insurance provided solely under the **Crime Coverage Section**, and
applies to all Insuring Agreements of that Coverage Section, as follows:

In consideration of the premium charged, it is hereby understood and agreed that the
following **Insureds** is/are added as additional **Named Entity(s)**:

ADDITIONAL NAMED ENTITY(S)

| |
|---|
| *29 Prime, Inc* |
| |
| |
| |
| |
| |
| |
| |
| |
| |

No **Per Occurrence Limit of Liability** during any period will be cumulative with any other
amount applicable to the same coverage during any other period.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Yellen*

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 016*

ENDORSEMENT# *17*

This endorsement, effective *12:01 am     October 22, 2013*     forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ADD CREDIT, DEBIT OR CHARGE CARD FORGERY ENDORSEMENT
(CRIME COVERAGE SECTION ONLY)**

In consideration of the premium charged, it is hereby understood and agreed that this
endorsement modifies insurance provided under the **Crime Coverage Section**, and applies
solely to Insuring Agreement B. **FORGERY OR ALTERATION**, as follows:

**A. Schedule**

| Per Occurrence Limit Of Liability | Covered Instruments |
|---|---|
| $1,000,000 | [X] Includes written instruments required in conjunction with any credit, debit or charge card issued to the Insured or any Employee for business purposes. |
|  | [ ] Limited to written instruments required in conjunction with any credit, debit or charge card issued to the Insured or any Employee for business purposes. |

**B. Provisions**

1.   Covered Instruments either includes or is limited to, whichever is indicated as
applicable in the Schedule, written instruments required in conjunction with any
credit, debit or charge card issued to the **Insured** or any **Employee** for business
purposes.

2.   The most we will pay in any one **Occurrence** is the applicable **Per Occurrence Limit
of Liability** shown in the Schedule.

3.   The following exclusion is added to Clause 3. **EXCLUSIONS** at the end thereof:

Insuring Agreement B. **FORGERY OR ALTERATION**, of this **Crime Coverage Section** does
not apply to loss arising from any credit, debit or charge card if the **Insured(s)** have not
complied fully with the provisions, conditions or other terms under which the card was
issued.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Yellen*
_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 017*

96298 (10/07)   *BRANCHive Copy*       Page 1 of 1

ENDORSEMENT# *18*

This endorsement, effective *12:01 am*    *October 22, 2013*        forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NAMED INSURED OMNIBUS ENDORSEMENT
### (CRIME COVERAGE SECTION ONLY)

In consideration of the premium charged, it is hereby understood and agreed that solely
with respect to **Loss** as may otherwise have been covered under the **Crime Coverage
Section**, the Item of the **DECLARATIONS** entitled **NAMED ENTITY** is amended by addition
of the following:

"and any interest hereafter owned, controlled or operated by any one of those named as
**Insured**, subject, however, to Clause 6. **CONDITIONS,** Paragraph a. CONDITIONS
APPLICABLE TO ALL INSURING AGREEMENTS OF THIS CRIME COVERAGE SECTION,
subparagraph v. CONSOLIDATION - MERGER OR ACQUISITION; and any **Employee Benefit
Plan** sponsored by the **Insured**(s) now existing or hereafter created or acquired and
required to be bonded under the Employee Retirement Income Security Act of 1974."

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 018*

105100 (4/10)  *BRANCHive Copy*        Page 1 of 1

**ENDORSEMENT# *19***

This endorsement, effective *12:01 am        October 22, 2013*        forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INCLUDE DESIGNATED PERSON REQUIRED TO HAVE KNOWLEDGE OF LOSS
ENDORSEMENT
(CRIME COVERAGE SECTION ONLY)**

In consideration of the premium charged, it is hereby understood and agreed that this
endorsement modifies insurance provided solely under the **Crime Coverage Section**, and
applies to all Insuring Agreements of that Coverage Section, as follows:

**A.    Schedule**

| Position Of Designated Person(s): |
| --- |
| *Human Resources*<br>*General Counsel*<br>*Risk Manager*<br>*Internal Audit* |

**B.    Provisions**

1.    The introductory paragraph of Clause 1. **INSURING AGREEMENTS** is replaced
by the following:

Coverage is provided under the following Insuring Agreements for which a Per
Occurrence Limit of Liability is shown in the Declarations and applies to loss
that the **Insured** sustains resulting directly from an **Occurrence** taking place
during the Policy Period shown in the Declarations, except as provided in
Condition 6(a)(xv) or 6(a)(xvi), which is **Discovered** by a Designated Person
during the Policy Period shown in the Declarations or during the period of
time provided in the Extended Period To Discover Loss Condition 6(a)(xi):

2.    The first paragraph of Condition 6(a)(vii) DUTIES IN THE EVENT OF LOSS, is
replaced by the following:

(1)    After a Designated Person **Discovers** a loss or a situation that may
result in loss of or damage to **Money, Securities** or **Other Property** the
**Insured** must:

3.    Paragraph (2) of Condition 6(a)(xii) JOINT **INSURED** is replaced by the
following:

(2)    If any Designated Person of any Insured has knowledge of any
information relevant to this **Crime Coverage Section**, that knowledge is
considered knowledge of every **Insured**.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

© All rights reserved.

***END 019***

## ENDORSEMENT# *19*    (continued)

4.  Paragraph (1) of Condition 6(b)(i) TERMINATION AS TO ANY EMPLOYEE is replaced by the following:

    (1)  As soon as a Designated Person not in collusion with the **Employee** learns of **Theft** or any other dishonest act committed by the **Employee** whether before or after becoming employed by the **Insured**; or

5.  Clause 2. **DEFINITIONS**, Paragraph (d) ("Discover", Discovered" or Discovery") is deleted in its entirety and replaced as follows:

    (d)  **"Discovery"**, **"Discover"** or **"Discovered"** means the time when a Designated Person first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this **Crime Coverage Section** has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

    **"Discovery"**, **"Discover"** or **"Discovered"** also means the time when a Designated Person first receives notice of an actual or potential claim in which it is alleged that the **Insured** is liable to a third party under circumstances, which, if true, would constitute a loss under this **Crime Coverage Section.**

6.  Clause 2. **DEFINITIONS**, is amended by appending the following to the end thereof:

    **"Designated Person"** means:

    (1)  Any insurance risk manager;

    (2)  An **Employee** in your Human Resources Department or its equivalent;

    (3)  Any director, trustee, partner, **Member** or **Manager;**

    (4)  Any elected, appointed or otherwise titled officer;

    (5)  The highest ranking **Employee** at the **Premises** where such **Employee** performs the majority of his or her duties; or

    (6)  Any person in a position shown in the **Schedule;**

    of any **Insured.**

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, limitations, conditions, or provisions of the attached Policy other than the above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_(signature)_

_____

AUTHORIZED REPRESENTATIVE

◉ All rights reserved.
*END 019*

ENDORSEMENT# *20*

This endorsement, effective *12:01 am*     *October 22, 2013*        forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR THEFT OR DISHONESTY ENDORSEMENT
### (CRIME COVERAGE SECTION ONLY)

In consideration of the premium charged, it is hereby understood and agreed that, in the
**Crime Coverage Section**, Condition 6(b)(i) TERMINATION AS TO ANY EMPLOYEE,
subparagraph (1) is deleted in it's entirety and replacing it with the following:

(1)    As soon as:

    (i)    the **Insured**; or

    (ii)   any of the **Insured's** partners, **Members**, **Managers**, officers, directors, or
        trustees not in collusion with the **Employee**;

    learn of **Theft**  or any other dishonest act committed by the **Employee**

    ▪    After becoming employed by the **Insured**; or

    ▪    Prior to becoming employed by the **Insured**, provided that such conduct
        involved loss of **Money**, **Securities** or **Other Property** valued at the amount
        specified in the schedule below or more.

**Schedule**

| Prior Theft or Dishonesty Amount: *$10,000* |
| --- |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Veller*
_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 020*

96295 (10/07)   *BRANCHive Copy*          Page 1 of 1

ENDORSEMENT# *21*

This endorsement, effective *12:01 am*     *October 22, 2013*          forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RELIANCE UPON APPLICATION MADE TO ANOTHER CARRIER
(SPECIFIED COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed, solely with
respect to coverage as may be provided under the **Specified Coverage Section(s)** (as
defined below), as follows:

1.   In granting under the **Specified Coverage Section(s)**, the **Insurer** has relied upon
     the **Competitor's Application** and the statements, warranties and representations
     contained therein as being accurate and complete as of the **Date Signed**. The
     **Insureds** extend any warranties and representations in the **Competitor's
     Application(s)** to the **Insurer** and further warrant and represent to the **Insurer** that
     the statements and representations made in the **Competitor's Application(s)** were
     accurate and complete on the **Date Signed**. All such statements and representations
     shall be deemed to be material to the risk assumed by the **Insurer**, are the basis of
     this policy and are to be considered as incorporated into this policy.

2.   "**Competitor's Application(s)**" means the application(s) of the **Named Applicant(s)**
     to the **Other Carrier(s)** for the **Type of Coverage** reflected in the table below:

| Named Applicant(s) | Other Carrier | Type of Coverage | Date Signed |
|---|---|---|---|
| *OC Listing, Inc* | *Chubb Insurance* | *D&O, EPL, FLI* | *December 19, 2013* |

If such application form was submitted to the **Other Carrier** in connection with a
renewal of coverage, then "**Competitor's Application(s)**" shall also mean all
previous policy application forms submitted to that **Other Carrier** for any policy of
which this policy is a renewal, replacement or succeeds in time. "**Competitor's
Application(s)**" also means all the materials submitted with or incorporated by
reference into any of the application forms referenced above.

◊ All rights reserved.
*END 021*

<u>**ENDORSEMENT#** *21*</u>   (continued)

3.     "Specified **Coverage Section(s)**" means the following **Coverage Sections:**

SPECIFIED COVERAGE SECTIONS:
*D&O*
*EPL*
*Crime*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
            AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 021*

100704 (11/08) *BRANCHive Copy*        Page 2 of 2

ENDORSEMENT# *22*

This endorsement, effective *12:01 am*      *October 22, 2013*      forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUBLISHING LIABILITY EXCLUSION ENDORSEMENT
### (WITH SECURITIES CLAIM CARVE-BACK)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to **Loss** as may otherwise have been covered under the **D&O Coverage Section**, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** alleging, arising out of, based upon or attributable to publishing or advertising activities or activities incidental thereto, including but not limited to **Claims** alleging plagiarism; infringement of copyright, patent, title or slogan; piracy, unfair competition or idea misappropriation under an implied contract; false arrest, detention, imprisonment or malicious prosecution; wrongful entry, eviction or other invasion of the right of private occupancy; the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy.

Notwithstanding the foregoing, it is further understood and agreed that this exclusion shall not apply to any **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
*END 022*

99182 (5/08) *BRANDArchive Copy*      Page 1 of 1

ENDORSEMENT# *23*

This endorsement, effective *12:01 am*     *October 22, 2013*      forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT
### (WITH SECURITIES CLAIM CARVEBACK)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim(s)** made against any **Insured(s)** alleging, arising out of, based upon or attributable to any **Insured(s)'** performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto; provided, however, this exclusion shall not apply to any **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 023*

98962 (4/08)  *BRANDArchive Copy*        Page 1 of 1

ENDORSEMENT# *24*

This endorsement, effective *12:01 am*    *October 22, 2013*    forms a part of
policy number *01-541-71-46*
issued to    *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ORDER OF PAYMENTS ENDORSEMENT
### (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the **EPL Coverage Section** is amended to include the following Clause at the end thereof:

**OP-1.ORDER OF PAYMENTS**

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **EPL Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **EPL Coverage Section**, then the **Insurer** shall:

    (a) first pay such **Loss** of the **Individual Insureds** for which a **Company** has neither indemnified nor is permitted or required to indemnify pursuant to law, contract or charter or by-laws of the **Company** (herein "**Non-Indemnifiable Loss**"), then with respect to whatever remaining amount of the **Limit of Liability** is available after payment of such **Loss**,

    (b) then pay **Indemnifiable Loss** of **Individual Insureds**, and

    (c) then pay **Loss** of the **Company**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of the **EPL Coverage Section** (including those circumstances described in the first paragraph of this Clause OP-1, the **Insurer** shall at the written request of the **Named Entity**:

    (1) first pay the **Non-Indemnifiable Loss** of **Individual Insureds**, then

    (2) either pay or hold payment all other payments of such **Loss**.

In the event that the **Insurer** withholds payment under subparagraphs OP-1 (1) or (2) above pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Entity**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to an **Individual Insured** in the event of covered **Non-Indemnifiable Loss** of an **Individual Insured**.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **EPL Coverage Section** pursuant to this Clause OP-1.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

® All rights reserved.

101090 (02/09) *BRANCH*        *END 24*
*Archive Copy*

ENDORSEMENT# 25

This endorsement, effective *12:01 am      October 22, 2013*      forms a part of
policy number  *01-541-71-46*
issued to   *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFINITION OF LOSS AMENDED ENDORSEMENT
### (SECTION 11, 12 OR 15)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that in Clause
2. **DEFINITIONS** of the **D&O Coverage Section**, the definition of " **Loss**" is amended by
deleting subparagraph (iv) thereof in its entirety and replacing it with the following:

(iv) matters which may be deemed uninsurable under the law pursuant to which this
policy shall be construed. Notwithstanding the foregoing subparagraph (iv), the **Insurer**
shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of
the Securities Act of 1933, as amended, the portion of any amounts incurred by
**Insureds** which is attributable to such violations constitutes uninsurable loss and shall
treat that portion of all such settlements, judgments and **Defense Costs** as constituting
**Loss** under this policy.

It is further understood and agreed that Clause 4. **EXCLUSIONS** of the **D&O Coverage
Section** is amended by adding the following to the end thereof:

Notwithstanding anything stated in Clause 4. **EXCLUSIONS** above, Exclusions (a) and (b)
shall not apply, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the
Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such
violations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

M112261   **BRANCH**      **END 25**
                **Archive Copy**

ENDORSEMENT# *26*

This endorsement, effective   *12:01 am*     *October 22, 2013*      forms a part of
policy number   *01-541-71-46*
issued to    *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**AUTO- THRESHOLD AMENDED**
**(CRIME ADVANTAGE ENDORSEMENT AMENDED)**
**(CRIME COVERAGE SECTION ONLY)**

In consideration of the premium charged, it is hereby understood and agreed that this endorsement modifies insurance provided under the **Crime Coverage Section** as follows:

It is agreed that in Clause **6. CONDITIONS** (a) CONDITIONS APPLICABLE TO ALL INSURING AGREEMENTS OF THIS CRIME COVERAGE SECTION of the policy, paragraph (v) CONSOLIDATION - MERGER OR ACQUISITION is hereby deleted in its entirety and replaced with the following:

If the **Insured** consolidates or merges with, or purchases or acquires the assets or liabilities of, another entity:

The **Insured** must give the **Insurer** written notice and obtain the **Insurer's** written consent to extend the coverage provided by this **Crime Coverage Section** to such consolidated or merged entity or such purchased or acquired assets or liabilities. If such consolidation, merger or purchase or acquisition of assets or liabilities increases the **Insured's** total assets by more than fifteen percent (15%), the **Insurer** may condition the **Insurer's** consent by requiring payment of an additional premium; but for the first ninety (90) days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this **Crime Coverage Section** shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all **Occurrences** causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

M112255    *BRANCH*        *END 26*
         *Archive Copy*

<u>**ENDORSEMENT#**</u> *27*

This endorsement, effective *12:01 am*     *October 22, 2013*                forms a part of
policy number   *01-541-71-46*
issued to *OC Listing, Inc*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104892 | 04/10 | PRIVATEEDGE PLUS - STATE OF CALIFORNIA DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 104890 | 04/10 | PRIVATEEDGE PLUS - GENERAL TERMS AND CONDITIONS - STATE OF CALIFORNIA |
| 95727 | 09/07 | D&O COVERAGE SECTION |
| 95728 | 09/07 | EPL COVERAGE SECTION |
| 95730 | 09/07 | CRIME COVERAGE SECTION |
| SYSLIB | | F.R.I.S.C. LIST |
| | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| 96311 | 02/08 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| 105721 | 08/10 | DEFINITION OF LOSS AMENDED ENDORSEMENT (PUNITIVE DAMAGES) (D&O AND EPL COVERAGE SECTIONS) - (STATE OF CALIFORNIA) |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 97629 | 03/08 | FLSA AND RELATED EXCLUSIONS AMENDED (D&O AND EPL COVERAGE SECTIONS) |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 95737 | 09/07 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| 105469 | 04/10 | CLAIM DEFINITION AMENDED (MEDIATION)(D&O & EPL COVERAGE SECTIONS) |
| 105468 | 04/10 | CLAIM DEFINITION AMENDED (INJUNCTIVE RELIEF)(D&O & EPL COVERAGE SECTIONS) |
| 102330 | 08/09 | INSURED V INSURED EXCLUSION AMENDED (SARBANES-OXLEY WHISTLEBLOWER; CREDITORS' COMMITTEE) (D&O COVERAGE SECTION) |

*Archive Copy*            **END 027**
78859 (10/01)  **BRANCH**              Page 1 of 3

<u>ENDORSEMENT#</u> *27*

This endorsement, effective *12:01 am*   *October 22, 2013*           forms a part of
policy number  *01-541-71-46*
issued to *OC Listing, Inc*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 99563 | 07/08 | SIDE A EXCESS LIMIT OF LIABILITY ENDORSEMENT (EXCESS LIMIT APPLICABLE TO NON-INDEMNIFIABLE LOSS UNDER THE D&O COVERAGE SECTION) |
| 105118 | 04/10 | EXTRADITION COVERAGE (D&O COVERAGE SECTION) |
| 99193 | 05/08 | SPECIFIC INVESTIGATION-CLAIM-LITIGATION-EVENT OR ACT EXCLUSION (D&O EPL AND FLI COVERAGE SECTION) |
| 99187 | 05/08 | SPECIFIC ENTITY EXCLUSION (CLAIMS BROUGHT BY OR AGAINST) (ALL COVERAGE SECTIONS) |
| 95756 | 09/07 | EXCLUDE CLAIMS BROUGHT BY OR ON BEHALF OF SPECIFIC INDIVIDUALS (D&O & EPLI COVERAGE SECTION) |
| 101279 | 03/09 | ADDITIONAL INSUREDS - LISTED AFFILIATES (SPECIFIED COVERAGE SECTIONS) |
| 95869 | 09/07 | ADDITIONAL INSURED ENDORSEMENT (CRIME COVERAGE SECTION) |
| 96298 | 10/07 | ADD CREDIT, DEBIT OR CHARGE CARD FORGERY ENDORSEMENT (CRIME COVERAGE SECTION) |
| 105100 | 04/10 | NAMED INSURED OMNIBUS ENDORSEMENT (CRIME COVERAGE SECTION) |
| 96301 | 10/07 | INCLUDE DESIGNATED PERSON REQUIRED TO HAVE KNOWLEDGE OF LOSS ENDORSEMENT (CRIME COVERAGE SECTION) |
| 96295 | 10/07 | PRIOR THEFT OR DISHONESTY ENDORSEMENT (CRIME COVERAGE SECTION) |
| 100704 | 11/08 | RELIANCE UPON APPLICATION MADE TO ANOTHER CARRIER (SPECIFIED COVERAGE SECTIONS) |
| 99182 | 05/08 | PUBLISHING LIABILITY EXCLUSION ENDORSEMENT (WITH SECURITIES CLAIM CARVE-BACK) (D&O COVERAGE SECTION) |
| 98962 | 04/08 | PROFESSIONAL ERRORS AND OMISSIONS EXCLUSION ENDORSEMENT (WITH SECURITIES CLAIM CARVEBACK) (D&O COVERAGE SECTION) |
| 101090 | 02/09 | ORDER OF PAYMENTS ENDORSEMENT |
| M112261 | | DEFINITION OF LOSS AMENDED ENDORSEMENT |
| M112255 | | AUTO-THRESHOLD AMENDED |

<u>ENDORSEMENT#</u> *27*

This endorsement, effective *12:01 am*      *October 22, 2013*                forms a part of
policy number    *01-541-71-46*
issued to *OC Listing, Inc*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*Archive Copy*      **END 027**
78859 (10/01)  **BRANCH**        Page 3 of 3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Buchalter, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF RUSSELL WALLACE IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 9, 2017 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) March 9, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
29 Prime, Inc.
24310 Moulton Parkway
Suite O-103
Laguna Hills, CA 92637

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 9, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Mail
Hon. Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 9, 2017 | Danielle Cyrankowski | /s/ Danielle Cyrankowski |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF**

- *ATTORNEY FOR DEBTOR:* Richard L Barnett    rick@barnettrubin.com, kelly@barnettrubin.com
- *ATTORNEY FOR TRUSTEE:* Caroline Djang    cdjang@rutan.com
- *TRUSTEE:* Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com
- *U.S. TRUSTEE:* United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

BN 28118263v1